## Chicago Union Traction Company v. Jennie S. Myers.

### Gen. No. 12,815.

1. VERDICT—*when set aside as against the evidence.* A verdict clearly against the evidence will be set aside by the Appellate Court on review.

2. "BURDEN OF PROOF"—*when phrase erroneously used in instruction.* Where the phrase "burden of proof" is used to mean other than the obligation on the party who asserts the affirmative of the issue to prove the same by a preponderance of the evidence, the sense in which such words is used should be clearly indicated.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the Hon. ARTHUR H. CHETLAIN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1906. Reversed and remanded. Opinion filed May 14, 1907.

**Statement by the Court.** Plaintiff, in an action on the case for personal injuries, filed a declaration containing four counts. At the close of the evidence the court instructed the jury to find the defendant not guilty as to the second, third and fourth counts. The jury found the defendant guilty and assessed plaintiff's damages at $7,000, from which plaintiff remitted $2,000, and judgment was entered for $5,000, to reverse which defendant prosecutes this appeal.

The first count alleges that on June 20, 1902, defendant was possessed of and operating a certain electric street car on certain tracks used by the defendant in North Robey street, Chicago, between Fulton street and Carroll avenue; that plaintiff was a passenger

upon said street car, which was an open south-bound car; that said car was then and there under the care and management of divers of defendant's servants who were driving the car along said North Robey street; that "defendant then and there by its said servants so carelessly and improperly drove and managed the said street car, that by or through the negligence, mismanagement and unskillfulness of the defendant by its said servants in that behalf, the said street car in which the plaintiff was riding, as aforesaid, then and there ran into and struck and collided with great force and violence with a certain wagon being upon and along said public street or highway, and by means of the force and violence with which said street car * * * struck and collided with said wagon * * * the plaintiff * * * in the exercise of all due care and diligence for her own safety * * * was then and there thrown with great force and violence from and out of said street car * * * to and upon the ground," thereby receiving the injuries complained of.

The defendant pleaded not guilty to the declaration.

Plaintiff was a passenger on a south-bound electric car on Robey street, which, near the middle of a block, came in contact with a wagon upon which was a bulky load of planks, horses, wheelbarrows and other building contractors' tools and appliances.

The evidence given for the plaintiff tends to show that by the collision between the car and the wagon, plaintiff was thrown from the car and injured.

JOHN A. ROSE and ALBERT M. CROSS, for appellant; W. W. GURLEY, of counsel.

COLSON & JOHNSON, for appellee; O. W. DYNES, of counsel.

MR. JUSTICE BAKER delivered the opinion of the court.

We will first consider the question whether the ver-

dict was against the evidence. Plaintiff testified that she was sitting on the west side of an open car at the outer end of the seat facing the rear end of the car; that the car struck something, she did not know what, and she was thrown from the car to the ground and injured. Her son, then twelve years old, testified that he sat on the same seat with his mother next to the aisle; that they were riding backward; that there was a rail at the outer end of the seat; that "the car gave a jolt and my mother was thrown right off her seat, right out of it—gave a terrible lift. The car seemed to lift right up in the air    *    *    *    the car went about three feet and stopped." Sitting, as the plaintiff was, riding backward, with the back of a seat behind her and a rail at the outer end of the seat, it is difficult to see how she could have been thrown out of the car in the manner and from the cause stated by her and her son. The sudden stopping of the car would tend to throw her in the direction the car was moving, to throw her against the back of the seat, and would not tend to throw her out of the car at right angle to such direction.

The only witness for the plaintiff who testified to seeing what it was that the car came in contact with, was Nathan Samelow. He was confused as to the points of the compass and between right and left, but we think that the substance of what he intended to state was, that he was driving north in the east track; that in front of him was the loaded wagon, and behind him a street car; that the car bell rang; that witness turned out of the track to the east and the wagon in front of him turned to the west into the west or south-bound track; that after the north-bound car had passed, the team and wagon in front of him turned to the east, but before the wagon had gone far enough to the east to permit a car on the south-bound track to pass by it, the car in question came up to the wagon, struck it, and plaintiff fell from the car. He further testified in chief that the car struck the "corner of the

wagon; the west side corner. Q. Was it the rear or front of the wagon which was struck? A. The rear.''

Appellee contends that Champlin, a witness for the defendant, testified that when the wagon turned to the east, the rear end of it extended over the ground on which the car had to pass, and that therefore his testimony corroborated that of Samelow. Champlin testified that ''immediately before the wagon got to the alley in this block, it turned and went east, started east and as it did so, the wagon which, as I said before, was heavily loaded, the rear of it extending over the ground our car had to pass over, the front of the car got by before we met the wheelbarrows which were extending over the end, and one or more scraped alongside of the car and finally one fell into the car.'' * * * Q. ''At the time the rear of the wagon was in contact with the car, which way were the horses headed? A. Pretty nearly directly east. Q. Had the front wheels got out of the track? A. I should say they had.''

If, when the car came up to the wagon, any part of the wagon or its load extended into the space required for the car to pass by the wagon, the front end of the car would strike whatever part of the wagon or its load extended into such space.

It is common knowledge that in turning a wagon out of a car track, the hind axle will usually turn for a time upon the point of contact between the hind wheel on the side towards which the wagon is turning and the rail, as a pivot, and that in such case, if the bed of the wagon, or its load, extends back from the axle, the hind end of the wagon or its load will swing outward in the direction opposite to that in which the wagon is turning.

Champlin's testimony that the front end of the car passed by the wagon without striking; that when the wheelbarrow on the hind end of the wagon came in contact with the car, the horses were headed east and the front wheels out of the track, is consistent with the hypothesis that after the front end of the car passed by the wagon, the hind end of the wagon was thrown west,

nearer to the south-bound track, by the turning of the wagon to the east out of the north-bound track, but inconsistent with the hypothesis that as the car came up to the wagon, the rear end of the wagon, or its load, extended over the ground on which the car had to pass. Taking all of his testimony together, and it does not, in our opinion, tend to corroborate, but to contradict, the testimony of Samelow as to the position of the wagon and its load when the car came up to it.

For the defendant, Holland and Guetschow, passengers on the car, Thompson its motorman, and Forsberg its conductor, testified that when the car came up to the wagon there was room to pass; that when the car was about opposite the team, the driver turned his team to the east to drive east in an alley; that the front end of the car passed by the wagon safely, but that while the car was passing the wagon, the rear end of the wagon or its load swung towards the car and rubbed against or scraped the side of the car from a point some distance back of its front end. The testimony of Champlin, as has been said, corroborated the testimony of the other witnesses for the defendant.

The testimony of the motorman and the conductor was, that as the car approached the wagon, the car was running very slow; that the instant the driver of the team began to turn his team to the east, the motorman applied the brakes and made every possible effort to stop the car, and there is no evidence to the contrary. All the witnesses testify that the car ran but a few feet after it came in contact with the wagon.

If the verdict can be sustained, it must be sustained upon the ground that, from the evidence, the jury might properly find, as a fact, that when the car approached the wagon, some part of the wagon, or its load, was upon or so near to the south-bound track that the car on that track in attempting to pass by the wagon, struck it or the load upon it. Upon this question we have, in support of the verdict, only the confused testimony of Samelow. Against it we have the testimony of five

witnesses. No witness for the plaintiff testified that the front end of the car struck the wagon, and the witnesses for the defendant testified that it did not; that the wagon, or its load, first came in contact with the side, not the front end of the car. No witness on either side testified that either the car or wagon was broken or damaged by the contact or collision between the car and the wagon.

If the wagon had been where Samelow testified it was, the front end of the car would have struck the wagon. If the car had struck the wagon with such force as the testimony of the plaintiff and her son tended to show it did, it is almost certain that both the car and wagon would have been broken and damaged by such striking.

In our opinion, the verdict was clearly against the evidence, and for that reason the court erred in overruling defendant's motion for a new trial.

The following instruction was given for the plaintiff:

"The court instructs the jury that if they believe from the evidence, under the instructions of the court, that the plaintiff, while in the exercise of ordinary care for her own safety, was injured while traveling as a passenger on one of the cars of the defendant, and that the accident was not due to a cause beyond the control of the defendant, that is, that it was not the manner in which the team and wagon were driven which produced or tended to produce the accident, then the burden of proof is upon the defendant of showing that the injury was not due to the negligence of the defendant charged in the declaration."

The burden of proving negligence was, throughout the case, upon the plaintiff, and the court so instructed the jury at the request of the defendant.

Appellee's counsel contend that the phrase, "burden of proof," in the instruction in question, means the duty of producing evidence to meet a *prima facie* case, and cite in support of such contention C. U. T. Co. v. Mee, 218 Ill. 15. What was decided in that case was, that it was error in a case where the question was whether defendant's street car, upon which plaintiff

was riding, ran into a wagon, or the wagon backed into the car, to refuse to give for the defendant instructions that the burden of proof is not upon the defendant to show that it is not guilty of negligence, but is upon the plaintiff to prove by a preponderance of the evidence, that the defendant was guilty of negligence, and that in default of such preponderance the verdict should be for the defendant.

The phrase, "burden of proof," generally means the obligation on the party who asserts the affirmative of the issue to prove the issue by a preponderance of the evidence. In that sense the phrase is used in instructions given for the defendant in this case, and in instructions given in almost every criminal and civil case. If the phrase is used in an instruction in any other sense, or with any other meaning, such sense or meaning should be clearly stated in the instruction. We think the instruction should not have been given.

For the errors indicated, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*