**James E. Keelyn, Plaintiff in Error, v. C. G. Strieder, Defendant in Error.**

**Gen. No. 14,440.**

1. MUNICIPAL COURT—*effect of failure to file statement of set-off.* The failure of a defendant to file with his appearance a statement of his claim of set-off is waived ·by the plaintiff if he proceeds to trial upon such set-off knowing that no such statement had been filed.

2. MUNICIPAL COURT—*effect of oral statement of set-off.* If a defendant has filed no statement of set-off as required by statute, but in lieu thereof makes an oral statement of the defense of set-off, he is as much bound by such oral statement as he would be by a written one.

3. NEGOTIABLE INSTRUMENTS—*what does not sustain defense of want of consideration.* The defense of a want of consideration is not established by proof of partial failure of consideration.

4. NEGOTIABLE INSTRUMENTS—*as to what act of 1907 does not apply.* The act of 1907 pertaining to negotiable instruments does not apply to a promissory note executed prior to its going into effect.

5. CONTRACTS—*when rescission must be made.* One who desires to rescind a contract for fraud must act promptly; he cannot be passive and speculate as to the result of his investment, and this is especially true of mining stock which is likely to fluctuate in value.

Assumpsit. Error to the Municipal Court of Chicago; the Hon. CHARLES N. GOODNOW, Judge, presiding. Heard in this court at the March term, 1908. Reversed and judgment here. Opinion filed May 3, 1909.

**Statement by the Court.** The plaintiff in error, hereinafter referred to as plaintiff, sued the defendant in error, hereinafter referred to as defendant, on two promissory notes, one of date April 13, 1907, for

the sum of $200, due thirty days after date, payable to the order of the Nevada Mine Owners Association and endorsed by said association to the plaintiff, and one of date April 24, 1907, for the sum of $600, with interest at the rate of six per cent per annum, payable to the same association, and by said association endorsed to the plaintiff. The suit was commenced September 19, 1907, and the last trial, which occurred January 23, 1908, was the second trial of the cause. The last trial was by the court, without a jury, and before any evidence was introduced the defendant, by his attorney, stated: ''I wish to give notice of an offset, stating that the offset is for services and sale of 14,000 shares of stock, a commission of twenty per cent. Twenty-eight hundred dollars was the basis; that would be $560; and then we claim there is no liability on the note of $600 sued on, because it was given without consideration, making $1,160 against which they hold note of $100, $100 we have admitted to be due—what we have claimed—a difference in our favor of $460''. The defendant also tendered to plaintiff by his attorney four certificates of stock, numbered respectively 56, 57, 78 and 79, aggregating 3,000 shares, and asked plaintiff for $460 in settlement of the debt or obligation, which tender the plaintiff refused to accept. The court found the issues for the defendant and assessed his damages at the sum of $416.70, and after overruling motions of plaintiff for a new trial and in arrest of judgment, rendered judgment on the finding.

CHURCH & SHERBURNE, for plaintiff in error.

BULKLEY, GRAY & MORE, for defendant in error.

MR. PRESIDING JUSTICE ADAMS delivered the opinion of the court.

The plaintiff put in evidence the $200 note above mentioned, and also the $600 note, and proved by the defendant that the signatures to said notes were his

signatures, and that there remained due on the $200 note $100, and that he, the defendant, received from the Nevada Mine Owners Association a check for $600, on which he received the money, which check, with defendant's endorsement on it, plaintiff put in evidence. Attached to the $600 note are three certificates, numbered respectively 75, 76, 77, each for 1,000 shares of the capital stock of the Goldfield Vaneda Mining Company, issued to C. G. Strieder, the defendant, and which were collateral security for the note. This evidence constituted a *prima facie* case, entitling the plaintiff to recover.

We will next consider the evidence in respect to the defendant's claim that commission was due to him from the plaintiff on the sale by him of 14,000 shares of stock. It appears from the evidence that the Nevada Mine Owners Association was unincorporated, and that the plaintiff, James E. Keelyn, did business in that name, his office being in the city of Chicago. The evidence tends to prove that the plaintiff promoted the organization of the Goldfield Vaneda Mining Company, an Arizona corporation, which was chartered March 21, 1907, with a capital stock of $1,500,000 divided into shares of $100 each. The general nature of its business, as expressed in its charter, is "to purchase, lease, or otherwise acquire, own, sell, let, operate or otherwise dispose of or deal in or with mines, mining lands, mining rights", etc. Its property is in Nevada, and as the evidence tends to prove, consists of eight mining claims to which it has title, subject to the paramount title of the government, and two leases from the Red Hills Mining Company, known as the October and St. Paul claims. Twenty thousand shares of the stock of the Arizona corporation, owned by the Nevada Mine Owners Association were allotted to the defendant, for sale on commission, the shares to be sold for twenty cents per share, defendant's commission to be twenty per cent of the purchase price of the shares which might be sold by him. The de-

fendant sold shares to various persons, for which, as he testified, he turned over cash or its equivalent to the association amounting to $3,200, and he says he reinvested the commission to which he was entitled in 4,000 shares of the stock. This disposed of the 20,000 shares, 16,000 being sold to others and 4,000 reserved by defendant to himself as commission. The 4,000 shares were issued to him and he testified, "When I got the shares of stock, that closed the deal". Also, "I invested my commission in the stock. This transaction was closed up on the 6th of April". So, far, the defendant's testimony agrees with that of Mr. A. A. Heer, a witness for the plaintiff.

The defendant testified as to the circumstances under which the $600 note was executed substantially as follows: He had a letter from a Mr. White, to whom he had sent stock issued to him, "asking for $600 for the shares which he had agreed to purchase", saying that he could not use the stock because of the restriction as to its being transferred or assigned prior to January 1, 1908, and that he, defendant, called on Mr. Heer and told him this, and Heer said they did not want any one who was dissatisfied to take the stock, and would return the money, and he told Heer that he had advanced the money for the White stock, and Heer said to him to bring back the stock and he would give him back his money. A few days later he, defendant, took White to the office where Heer was, and the latter could not satisfy White, and, subsequently, defendant took White's stock to Heer, who said all right and gave him a check for the money. It appears from the cross-examination of the defendant that 4,000 shares were issued to the defendant, and only 2,000 shares to White, and that the money, if any, which he advanced on the White shares could only have been $400, so that there was at least a consideration of $200 for the $600 note. The following occurred in defendant's cross-examination:

"Q. How many shares of stock had White agreed

to take? A. I made this proposition. I will take two thousand shares, perhaps three, at the time the deal was made with Heer, I said, You make it two thousand shares for White, four thousand for me, and I think White will take three thousand shares".

The following questions and answers, in defendant's cross-examination, are in respect to the money received by him on the sale of shares:

"Q. Twelve hundred dollars from Riddel? A. Yes, sir.

Q. That is twenty-two hundred dollars? A. Yes, sir.

Q. And six hundred dollars from Graham, Deitz and Gorham; is that a fact? A. Yes, sir, and the balance from me.

Q. And that balance was four hundred dollars; not six hundred dollars, but four hundred dollars? A. Yes, sir."

The claim of the defendant, as stated by his counsel, before evidence introduced, was that the $600 note "was given without consideration".

Section 43 of the act in relation to the Municipal Court provides: "In case the defendant shall desire, upon the trial, to present any set-off or counter claim, he shall file a statement thereof with his appearance". No statement of set-off or counter claim was filed by the defendant. The plaintiff claims this was error, but he went to trial knowing that no such statement was filed by the defendant, and cannot now be heard to object. Nevertheless the defendant is as much bound by his oral statement of counter claim, on which the plaintiff went to trial, as if he had filed a written statement as provided by the statute.

The plaintiff, by section 40 of the act, when the suit is on a contract, is required to file a statement of the account or nature of the demand. A counter claim or set-off is legally a cross suit, and the evidence must be limited to the statement of it, as otherwise it might prove a delusion and a snare. Obviously, the object

of the statute is that each shall have notice of the other's claim, so that each may prepare for trial. Mc-Donald v. The People, 126 Ill. 150.

In order to sustain the claim of no consideration, it is not sufficient to show a partial failure of consideration. The defenses of want of consideration and partial failure of consideration are separate and distinct (Wadhams v. Swan, 109 Ill. 46, 61), and the party pleading want of consideration must prove it by a preponderance of the evidence. Stacker v. Hewitt, 1 Scam. 207; Topper v. Snow, 20 Ill. 434; Mitchell v. Deeds, 49 *ib.* 416; McMicken v. Safford, 197 *ib.* 540.

In the case last cited the suit was on a promissory note, and the defendants pleaded want of consideration. The trial court gave to the jury the following instruction:

"It is sufficient in this case for the plaintiff to prove a promise to forbear bringing suit upon the note in question for a reasonable time, in consideration of the undertaking of the elder McMicken to secure the signature on the said note of the two defendants and the actual return of the note to the plaintiff bearing the signatures of the defendants, and that she there-afterwards actually forebore to bring suit for such reasonable time. This makes out a *prima facie* case for the plaintiff and sufficiently supports the declaration to maintain a judgment, unless overcome by the testimony on the part of the defendants".

The court held the instruction correct, saying: "Under the state of the pleadings in this case we are disposed to hold that the first proposition given on the request of the defendant in error was correct. The declaration contained the common counts and also a special count, and the note relied upon was offered in evidence and the signatures of plaintiffs in error thereto proved. As we understand the practice that has obtained in suits upon such instruments, that made a *prima facie* case for the defendant in error under the common counts, and if plaintiffs in error wished

to rely upon their plea of want of consideration, they had a right to establish the facts alleged in their plea by evidence to be offered by them. (Stacker v. Hewitt, 1 Scam. 207; Hoyt v. Jaffray, 29 Ill. 104; Mitchell v. Deeds, 49 *id.* 416)''.

The cases cited rest on sound principle. If a defendant relying on a counter claim or set-off, should bring an original suit, the burden would be on him to prove his claim by the greater weight of evidence, and there is no good reason why the same rule should not apply in both cases. The rule is the same in equity. If the defendant to a bill files a cross-bill praying affirmative relief, he must aver and prove facts entitling him to the relief prayed, or he fails; yet such cross-bill is a mode of defense.

Counsel for defendant claim that the burden was on the plaintiff, on defendant's claim of want of consideration, to establish consideration and good faith, citing and relying on sections 28, 55 and 59 of the ''act in regard to negotiable instruments payable in money'', approved June 5, 1907, and in force July 1, 1907. Section 194 of the act provides: ''The provisions of this act do not apply to negotiable instruments made and delivered prior to the passage hereof''. The notes in question were executed respectively, April 10 and April 24, 1907; therefore consideration of the effect of the sections relied on by defendant's counsel is unnecessary.

Mr. Heer, with whom defendant testified he dealt, testified as to the circumstances under which the $600 note was made, that after defendant had closed up the deal and all the stock which had been allotted to him had been issued and paid for, defendant came to his office and said there was one man—witness thinks White—who had failed to take his portion of the stock, and that he, defendant, had used money which he had on hand, and the failure had put him in a hole, and that he and defendant discussed what arrangement could be made to help him out, with the result that witness

gave to him the check of the Nevada Mine Owners Association for $600 and took his note with 3,000 shares of stock attached. Witness says his recollection is that he made out the check the afternoon when the conversation occurred, and the next day defendant came to him, bringing the note and shares, which he took and gave the check to defendant. On cross-examination witness said: "Nothing was said, that I know of, at that time, in regard to the Nevada Mine Owners Association taking this White stock back in case Strieder was unable to obtain a purchaser for it".

Evidence was introduced by the defendant on which his counsel rely as showing that representations were made with regard to the condition of the property of the Goldfield Vaneda Mining Co. and the number of shares of the stock of the company, which had been subscribed for, and which affected the value of the shares, and which were false, and of such character that the defendant had a right to rescind the contract by which he acquired as commission 4,000 shares of the stock, and recover commission for the sale of 14,000 shares. Acting on this theory, he, by his counsel, produced and tendered to the plaintiff the 4,000 shares issued to him. The tender was refused, and plaintiff's counsel contend that the tender came too late. The suit was commenced September 19, 1907; the stock was issued to defendant April 6, 1907, and the tender was made January 23, 1908, on the trial and just before any evidence was introduced. As before stated, a cross-claim is, in law, a cross-suit, and it would seem that the defendant should be in such position, in making such claim, as he would be required to be if he were bringing an original suit for the claim, and we think it is clear that if the defendant had brought an original suit for the claim, he would have been required to show, if he depended on rescission, that he had rescinded the contract, and had returned or tendered the defendant what he had received from

him on the contract, before bringing suit; that he had placed the defendant in *statu quo*. However, we do not think it necessary to pass conclusively on this question. Defendant testified that a Mr. Edward White, who had been down to Goldfield, told him that things had been misrepresented; that nobody was working on the leases; and that a Mr. Shipman told him the same thing, and that, in the latter part of July or first of August, he, himself, went to Goldfield, and found the condition as had been represented to him, and that, when he returned he called on Mr. Heer and said to him that somebody had lied to him, defendant, and that "not until they made good on that proposition" would he take care of that note. He said nothing then about returning the stock, or the cancellation of the note. His language evidently indicates an intention to hold the stock until he could see how matters would turn out. September 6, 1907, the following letter was sent to him by the Nevada Mine Owners Association:

"Mr. C. G. Strieder,
    145 La Salle St.,
        Chicago, Ill.

Dear Sir: On April 22nd last through Mr. Heer you received the Nevada Mine Owners Association check for $600.00 which amount at request of Mr. Heer was charged to bills receivable. The time has run along pretty well into the months and we deem it advisable to call your attention to the fact of the loan, and would ask that you come up to our office and adjust the matter at once, and greatly oblige,
                Yours very truly,
        Nevada Mine Owners Association".

Defendant admitted having received the letter. On his cross-examination, after stating that he had received the letter, he was asked, "Did you adjust the matter", and answered, "No, I didn't feel like it".

The defendant held his stock from April 6, 1907, till January 23, 1908, when the tender was made in court, more than nine months after the suit was commenced,

and more than five months after he says he was informed that conditions had been misrepresented and after he had inspected the property himself and had observed its condition, and more than four months after he received the letter of September 6, 1907, demanding settlement of the $600 note, which he ignored and says he did not settle because he "didn't feel like it". Nothing is better settled than that one who desires to rescind a contract for fraud must act promptly; that he cannot be passive and speculate as to the result of his investment; and this is especially true of mining stock, which is likely to fluctuate in value. Burwash v. Ballou, 230 Ill. 34; Follett v. Brown, 188 ib. 244; Bavarian Brewing Co. v. Farrar, 163 Ill. 471; Grymes v. Sanders, 93 U. S. 55, 62.

Counsel for defendant recognize the law to be as stated, and say that defendant did not discover the falsity of the alleged misrepresentations till the trial before Judge Scovel, "when Keelyn testified that he was the Nevada Mine Owners Association". The trial before Judge Scovel was the first trial, and occurred October 14, 1907, and there is no evidence as to what Keelyn testified to on that trial, or that he testified at all. According to defendant's testimony he was informed, prior to the last of July, or about the first of August, 1907, that there had been misrepresentations, and he went to Goldfield and inspected the property, and, returning, saw Mr. Heer and told him that somebody had handed them a lemon, etc. Our conclusion is that the evidence is not sufficient to sustain the defendant's claim that the $600 note was given without consideration, or his claim for commission, and that the finding of the trial court is manifestly against the weight of the evidence.

The judgment will be reversed and judgment will be entered here for $700 and interest at six per cent per annum on $600 from April 24, 1907, the date of the $600 note. The date of payment of $100 on the note

for $200 does not appear from the evidence. Consequently, interest cannot be computed on the remainder due on that note.

*Reversed and judgment here.*