PEL-AIRE BUILDERS, INC., Plaintiff and Counterdefendant-Appellee, JUAN JIMENEZ *et al.*, Defendants and Counterplaintiffs-Appellants.

(No. 60706;

First District (3rd Division)—June 19, 1975.

*Rehearing denied July 17, 1975.*

Frederic J. Artwick, of Neighborhood Legal Assistance Center, of Chicago, for appellants.

Berkson, Gorov & Levin, of Chicago (Arthur M. Gorov, of counsel), for appellee.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Plaintiff, Pel-Aire Builders, Inc., brought action to recover damages for defendants' alleged breach of a written contract to erect a new front porch on defendants' home. Defendants, Juan Jimenez and Leticia Jimenez, his wife, filed an answer to plaintiff's second amended complaint and also a counterclaim for statutory damages, costs and attorneys' fees against plaintiff for an alleged violation of the Federal truth-in-lending disclosure requirements. After a trial without a jury, judgment was entered for $400 in favor of plaintiff on the second amended complaint, and against defendants on the counterclaim. Defendants' post-trial motions were denied. Defendants appeal from the judgment entered on the complaint and counterclaim.

The sole issue presented for review is whether the judgment as to the claim and counterclaim is contrary to the manifest weight of the evidence. Upon review of the record on appeal it appears that the testimony at the trial was not stenographically recorded. Subsequent to filing

their notice of appeal in this court, defendants tendered to the trial court a proposed report of proceedings. Pursuant to Supreme Court Rule 323 (c) (Ill. Rev. Stat. 1973, ch. 110A, par. 323(c)), the trial judge certified the proposed report of proceedings which defendants filed in this court. In addition to the testimony of the parties at trial, which is set forth in narrative, the report contains a stipulation that "the above related testimony would be considered as submitted both on behalf of the complaint and the counterclaim."

Plaintiff alleged in its complaint that defendants "wrongfully and without cause refused to allow the Plaintiff to complete said work" and sought liquidated damages in the sum of $630 pursuant to paragraph six of the contract. Defendants in their answer denied that they wrongfully and without cause canceled the contract, and affirmatively alleged that plaintiff ceased performance. Several defenses were raised, one of which denied plaintiff's right to recovery because it failed to secure the necessary building permit. In the counterclaim defendants sought statutory damages in the amount of $1,000, plus reasonable costs and attorneys' fees for plaintiff's failure to disclose to defendants their right to rescind the contract as provided by the Federal Consumer Credit Protection Act (15 U.S.C. § 1601 *et seq.*) and Federal Reserve Board Regulation Z (12 C.F.R. § 226). The answer and counterclaim were verified by defendants on information and belief.

The certified report of proceedings indicates that Juan Jimenez did not testify and, as summarized, sets forth the following:

Leticia Jimenez testified that after reading an advertisement of Pel-Aire Builders, Inc., in a Chicago newspaper, she telephoned that office on March 25, 1973, and spoke to Herbert Marshall, salesman for plaintiff, concerning the construction of a front porch on the Jimenez home. Marshall met with defendants at their home and a written contract was executed whereby plaintiff agreed, *inter alia*, to remove defendants' existing porch and replace it with a new one for the sum of $2,520. Plaintiff was to finance the cost over a period of 60 months for a finance charge of $708.60. Marshall orally stated that work would commence within 2 weeks, and that plaintiff would secure the building permit and remove the rubble upon destruction of the old porch. The report of proceedings states that Mrs. Jimenez "testified that a copy of Plaintiff's Exhibit 1 [the contract] was the only document she signed and was given by Mr. Marshall."

On April 28, 1973, two workmen demolished the old porch. The rubble was not removed and the front door was not usable. Mrs. Jimenez telephoned plaintiff on May 1, 1973, to complain that the rubble had not been removed, that no barricade had been set up around it, and

that since April 28, no further work had been done on the premises. On May 3, 1973, two workmen erected temporary supports to hold up the roof where the front porch had been. On May 4, 1973, she again telephoned plaintiff to inquire why work had not progressed and why no building permit had been secured. She testified that on both of these dates she spoke to a person who identified himself as the owner of the company. During the second telephoned conversation she was told by Peller, the president, that the weather had been bad and that a permit was not necessary. She was advised to either get her own permit or wait several weeks for plaintiff to do so. Mrs. Jimenez further testified that she telephoned plaintiff several times the next week but received no assurance as to when work would be resumed or that plaintiff would procure the building permit. A registered letter sent by Mrs. Jimenez on May 14, 1973, to plaintiff was returned to her after plaintiff refused to accept it. The letter was admitted into evidence. In it she requested plaintiff to cancel the contract for the reasons that plaintiff had not procured a building permit, had failed to correct the dangerous condition of the premises, and had failed to have workmen on the site to complete the job. She also stated that defendants had hired another contractor to complete the work.

Harold Peller, president of plaintiff company, testified that the work to be done on the Jimenez residence was subcontracted to others. He recalled receiving only two telephone calls from Mrs. Jimenez in May of 1973; that during the second call she said she did not want plaintiff to continue work on her porch, and that she intended to get a different contractor to complete the work. Plaintiff did no additional work after the second call. Peller further testified that a building permit had been obtained, and it was introduced into evidence. He stated that defendants never paid plaintiff any money pursuant to their contract.

Marshall testified that he was a salesman for plaintiff; that he signed the contract on plaintiff's behalf; that he recalled work being commenced on the premises, but not when it was commenced, and that work had not been completed. Although he personally procured the building permit and had to go to the City Building Department on two occasions to get it, he could not recall when it was issued.

Peller further testified that in several telephone conversations with Mrs. Jimenez he explained that the subcontractor could not pour concrete for the new porch until the frost was out of the ground. In surrebuttal, Mrs. Jimenez testified that Marshall had not told defendants that a delay in completion of the job might occur due to frost. She further stated that the weather in early May, 1973, was dry and warm.

The trial court found for and awarded plaintiff the sum of $400 as

damages for work actually performed. In ruling on defendants' post-trial motion the court stated that it was defendants' actions which made it impossible for plaintiff to perform its contract and that the delays in commencing the work and the lateness in obtaining the permit did not affect the contract. The trial court also entered judgment in favor of plaintiff upon defendants' counterclaim. The court denied defendants' post-trial motion as to the counterclaim for the reason that defendants had not sustained their burden of proof, stating that they "offered no testimony or any exhibits when his case-in-chief was ready to proceed" and "stood on his pleadings and stipulation of the testimony and exhibits offered in the trial of the plaintiff against his defendant."

The gist of defendants' defense to plaintiff's complaint is that plaintiff unilaterally ceased performance of its obligations under the instant contract which required defendants to engage another contractor to complete the work. Defendants alleged that plaintiff failed to commence and complete the work within a reasonable period of time, failed to remove the rubble from the old porch, and failed to obtain a building permit in a timely manner.

■■ The contract is silent as to when performance was to have commenced and been completed. In such case the law implies that performance will be within a reasonable time. What is a reasonable time is a question of fact. (*J.J. Brown Co. v. J.L. Simmons Co.* (1954), 2 Ill.App. 2d 132, 118 N.E.2d 781.) Although Mrs. Jimenez testified that Marshall orally stated to her that work would start within 2 weeks of March 25, 1973, there is other evidence that plaintiff was prevented from commencing or completing work until the frost was out of the ground. Paragraph 13 of the "Terms of Contract" specifically provides that the "Seller is not responsible or liable for damages for delay or inability to perform caused by * * * weather conditions * * *." The contract does provide that all rubbish and debris be removed from the premises by the plaintiff; however, the contract is silent as to when or during what stage of construction the debris is to be removed. Finally, defendants argue that plaintiff's failure to procure the building permit in a timely manner constituted a breach of the contract. Although the date of its issuance is uncertain, a building permit was in fact issued. Each party here on appeal argues that by the terms of the contract the other was required to obtain the permit. However, there is no evidence whatsoever that the failure to obtain the building permit prevented plaintiff's performance of his obligations under the contract.

We find there is sufficient evidence in the record to establish that the plaintiff did not unreasonably delay commencement of construction or

abandon work; that since construction had not been completed, plaintiff was not required to remove the debris from the old porch; and that the failure by plaintiff, assuming it was its duty to obtain the building permit, did not cause the alleged delay in construction. Upon the record before us we conclude and hold that the trial court was warranted in finding for plaintiff and against defendants, and that the judgment entered for plaintiff on its complaint is not contrary to the manifest weight of the evidence. *Stevens v. Fanning* (1965), 59 Ill.App.2d 285, 207 N.E. 2d 136; *Filbey Equipment Co. v. Major* (1965), 62 Ill.App.2d 66, 209 N.E.2d 858.

Defendants in their counterclaim sought damages, costs and reasonable attorneys' fees for plaintiff's failure to disclose in writing to defendants the right to rescind the contract as required by the Consumer Credit Protection Act (15 U.S.C. § 1635) and Regulation Z of the Federal Reserve Board (12 C.F.R. § 226).

Recovery under the penalty provisions of 15 U.S.C. § 1640(a) has been allowed in actions commenced in the State courts of other jurisdictions. (See *Lewis v. Delta Loans, Inc.* (Miss. 1974), 300 So.2d 142; *Hank's Auto Sales, Inc. v. Fisher* (1973), 38 Ohio App.2d 1, 310 N.E.2d 259; and *Young v. Tri-City Remodeling Enterprises, Inc.* (City Ct. Albany, N.Y., 1972), 335 N.Y.S.2d 308, 71 Misc.2d 108.) There is also authority that the State courts of Illinois will entertain such actions. See *Mills v. State National Bank* (1975), 28 Ill.App.3d 830, 329 N.E.2d 255.

■■ On appeal, plaintiff contends that defendants failed to meet their burden of establishing a violation of the Federal statutes. It has long been held that the party asserting a fact or issue has the burden of proving that fact or issue. (*Chicago Union Traction Co. v. Myers* (1907), 134 Ill.App. 61; *Illinois Steel Co. v. Mann* (1902), 100 Ill.App. 367, *aff'd,* 197 Ill. 186, 64 N.E. 328.) The same rule applies to the party asserting a counterclaim. *Keelyn v. Strieder* (1909), 148 Ill.App. 238.

Defendants here argue that the portion of the judgment denying recovery on the counterclaim should be reversed because of the similarity of the facts in the instant case to the recent one of *Simmons v. American Budget Plan, Inc.* (E.D. La. 1974), 386 F. Supp. 194. However, based upon the facts in the record, we are constrained to agree with the trial court that defendants have failed to prove a violation of either of the above Federal statutes. In *Simmons,* Mrs. Simmons denied receiving a copy of the rescission notice and denied signing the notice. Her testimony was uncontradicted and undisputed. The United States District Court there held that Mr. and Mrs. Simmons were individually entitled to notice of a right of rescission under 12 C.F.R. § 226.6(e), and

allowed separate recoveries to each of them pursuant to the penalty provisions of 15 U.S.C. § 1640 for defendant's failure to disclose the required information as to each borrower.

■■ In the instant case, however, the trial court found that the defendants had failed to sustain their burden of proof as to any alleged violations. As noted above, the report of proceedings submitted by defendants and certified by the trial court consists of a narrative of the evidence adduced at trial. We find no evidence there tending to show that plaintiff failed to disclose to Mr. Jimenez his right of rescission. As to Mrs. Jimenez, defendants argue that her testimony "that a copy of Plaintiff's exhibit 1 was the only document she signed and was given by Mr. Marshall" clearly establishes plaintiff's failure to disclose to her her right of rescission. We must disagree, for this statement, at most, establishes only that she did not receive or sign any documents other than the contract tendered to her *by Marshall*. The record does not support defendants' argument that the only meeting between them and *any representative of Pel-Aire, Inc.*, was on March 25, 1973. Mrs. Jimenez testified that this was the only time she and her husband talked *to Marshall*. We cannot logically extend these statements to a generalization that Mrs. Jimenez did not receive any disclosure statements or sign a rescission notice tendered by Pel-Aire, Inc. Notwithstanding that Marshall was an agent of Pel-Aire, Inc., the testimony by Mrs. Jimenez is specific as to Marshall only. At the very least, the denial of receipt of a rescission notice and a denial of signing it must be unequivocal and specific as to the party who is required to make the truth-in-lending disclosures. (See *Simmons v. American Budget Plan, Inc.*) As the evidence does not support defendants' allegation of a violation, we need not discuss the obvious lack of any evidence as to damages in the nature of costs and attorneys' fees.

We therefore hold that the judgment entered by the circuit court of Cook County, both as to plaintiff's claim and defendants' counterclaim, is not contrary to the manifest weight of the evidence. Accordingly, the judgment is affirmed.

Affirmed.

McGLOON, P. J., and McNAMARA, J., concur.