TIMOTHY K. MARSH *et al.*, Plaintiffs-Appellees, v. LARRY RHEINECKER *et al.*, Defendants-Appellants (Churchill, McDonnell and Hatch, Appellees).

Fifth District   No. 5—93—0026

Opinion filed October 24, 1994.

Ann F. Snitzer, of UAW Legal Services Plan, of St. Ann, Missouri, for appellants.

Churchill, McDonnell & Hatch, of Belleville (William B. Starnes II, of counsel), for appellees.

JUSTICE MAAG delivered the opinion of the court:

Plaintiffs, Timothy and Donna Marsh, filed suit against the defendants, Larry and Katherine Rheinecker, for alleged breach of contract and fraud pursuant to a real estate sale contract. The complaint also named as a defendant Leonard Bush, d/b/a Bush Pest Control.

Bush settled with the plaintiffs prior to trial and was dismissed from the action. Following a bench trial, the court found in favor of the plaintiffs and against the defendants on count I, the contract claim, and in favor of the defendants and against the plaintiffs on count II, the fraud claim. Damages were awarded to the plaintiffs, after all offsets and credits in the amount of $8,588. Defendants were also ordered to pay plaintiffs' counsel $4,434.87, representing attorney fees, costs, and expenses. Defendants appeal.

This case arose from the sale of a residence located in Millstadt. On April 9, 1988, plaintiffs as purchasers and defendants as sellers entered into a written contract for the sale of the residence. The contract was a standard form supplied by the Belleville Board of Realtors.

Prior to signing the contract, the plaintiffs inspected the residence. During the inspection, plaintiffs noticed spots on a breezeway ceiling. Upon closer inspection, wood, dust, and splinters flaked out. The defendants were questioned about this condition by the plaintiffs, and the plaintiffs were told that the roof had leaked in the past, causing this condition, but that the leak had been repaired. Plaintiffs told their real estate agent to have that location checked thoroughly when the home was inspected.

At no time did the defendants make any representations or warranties concerning the condition of the home. Defendants had no knowledge of structural or termite damage. Defendants gave the plaintiffs full unrestricted access to the premises.

The real estate sales contract contained a provision, which will be more thoroughly discussed later in this decision, that obligated the defendants to provide and pay for a termite inspection. The inspection was performed by Bush Pest Control. The report indicated that the home had previously been treated for termites, but that there was no evidence of wood-destroying insects or damage. This report was delivered to the plaintiffs.

Prior to closing on the sale, neither plaintiffs nor defendants had any knowledge of any termite damage or other structural damage.

Five months after closing, Timothy Marsh was moving a refrigerator in an apartment adjacent to the breezeway when his foot went through the floor. When the floor and walls were closely inspected, evidence of dry rot and inactive termite damage was discovered. As a result, the plaintiffs filed suit against the defendants.

There is no issue in this case regarding the amount of the damages awarded, nor is there any issue regarding the court's ruling in favor of the defendants on the fraud count. The sole issue we are presented with is whether the defendants breached the real estate sale contract.

Three provisions of the contract are at issue, paragraphs 11, 15, and 16. These paragraphs state:

"11. WOOD INFESTATION REPORT. Not more than sixty days prior to closing, Sellers shall at their expense[ ] provide a written report from a licensed pest control firm certifying to Buyers that the premises have been inspected for termites and other wood-destroying insect infestation. If active infestation is found, the premises shall be treated at Sellers' expense. If structural damages due to prior or existing infestation is found, repairs shall be made at Sellers' expense, provided at the option of Sellers this Contract may be terminated and the earnest money refunded to Buyers.

* * *

15. CONDITION OF PREMISES: It is further mutually understood and agreed by and between the parties hereto that the Buyer has examined the said premises and knows the condition thereof, and the Buyer accepts the said premises in its present state and condition.

16. ENTIRETY OF AGREEMENT. This Contract contains the entire agreement between the parties and NO ORAL REPRESENTATION, warranty or covenant exist [sic] other than those herein set forth."

The trial court ruled that, under paragraph 11, the defendants were obligated to pay for the repair of the damage that was found af-

ter closing. Because the defendants refused to pay for this damage, the court found them to have breached the contract. The defendants claim that the court erred in its interpretation of this provision.

Courts are charged with the responsibility to construe, interpret, and determine the legal effect of a contract. The construction of a contract is a question of law, not fact. *Mazanek v. Rockford Drop Forge Co.* (1981), 98 Ill. App. 3d 956, 959, 424 N.E.2d 1271, 1276.

When the only issue on appeal is the construction of a contract provision, the court of review must make an independent review of that provision because only a question of law is at issue. (*Transcraft Corp. v. Anna Industrial Development Corp.* (1991), 223 Ill. App. 3d 100, 103, 584 N.E.2d 1033, 1035.) Both defendants and plaintiffs agree on these principles. It is only the interpretation of the particular contract provisions at issue which they dispute.

Defendants claim that their only obligation under the contract was to repair termite damage found by a termite inspector prior to closing. Given the fact that no such damage was discovered prior to closing, they claim that they are not liable to the plaintiffs under the contract.

Plaintiffs argue that the contract provides "no time limit by which damage must be found to trigger [s]eller's obligation to repair." They argue that when a contract is silent as to the time period in which an action must take place, the law implies a reasonable time (citing *Pel-Aire Builders, Inc. v. Jimenez* (1975), 30 Ill. App. 3d 270, 332 N.E.2d 519). Further, plaintiffs argue that the determination of what is a reasonable time is a question of fact. On this basis, they claim that the court's finding that the damage was discovered in a reasonable time is not a question of law subject to independent review, absent an abuse of discretion.

Both parties claim the contract is unambiguous. We agree. Therefore, our sole function is to determine as a matter of law whether the contract, read as a whole, contemplates liability on the part of the defendants under the facts of this case. *John Gabel Manufacturing Co. v. Murphy* (1945), 390 Ill. 455, 62 N.E.2d 401; *J.M. Beals Enterprises, Inc. v. Industrial Hard Chrome, Ltd.* (1990), 194 Ill. App. 3d 744, 551 N.E.2d 340.

Accordingly, we will consider the specific provisions at issue, giving the words their plain, ordinary meaning (*National Aircraft Leasing, Ltd. v. American Airlines, Inc.* (1979), 74 Ill. App. 3d 1014, 394 N.E.2d 470), without resorting to rules of construction. *Harris Trust & Savings Bank v. Hirsch* (1983), 112 Ill. App. 3d 895, 445 N.E.2d 1236.

The first sentence of paragraph 11 contemplates an inspection for termite damage and a report on the inspection being completed by a licensed inspector within 60 days of closing. This sentence, standing alone, could be interpreted to permit an inspection and report to be completed either prior to or subsequent to closing. We, however, must read the contract as a whole, by viewing each part in light of the others. (*Board of Trade v. Dow Jones & Co.* (1983), 98 Ill. 2d 109, 456 N.E.2d 84.) The next sentence obligates the sellers to treat active infestation. The last sentence permits the sellers, at their option, to either repair structural damage or terminate the contract and refund the earnest money.

It is this last sentence that leads us to conclude that the termite inspection and report were intended to be completed *prior* to closing. By reading the first and last sentences of paragraph 11 together, the obvious time frame contemplated for the completion of all obligations under paragraph 11 is from 60 days prior to closing up to the date of closing. This is so because, after closing, the contract is executed and there is no longer a contract to be terminated. A contract is executed if nothing remains to be done by either of the parties. (*Bennett & Kahnweiler, Inc. v. American National Bank & Trust Co.* (1992), 235 Ill. App. 3d 896, 601 N.E.2d 810.) Common sense dictates the same result. Otherwise, the option of terminating the contract and refunding the earnest money would require reconveyance to the sellers.

Accordingly, we find that the duty of the defendants to effectuate and pay for repairs due to termite damages under paragraph 11 is limited to damage discovered prior to closing. We do not believe that it would be necessary for the termite inspector to have discovered the damage in order to trigger paragraph 11 as defendants argue. Rather, if plaintiffs themselves had discovered the damage, the remedial provisions of paragraph 11 would apply. The clear intent of the paragraph is to provide a means to discover and remedy termite damage before the sale is consummated. The inspection is merely a tool in aid of this goal. However, once the closing has occurred, the buyer takes the premises "as is," at least in the absence of fraud. In this case, the trial court found that no fraud was involved.

We are bolstered in this conclusion by paragraphs 15 and 16 of the contract. Paragraph 15 specifies that the premises have been inspected by the buyer and they are accepted in their present condition. Moreover, paragraph 16 sets forth the provision that the real estate sales contract is the *entire* agreement between the parties.

Accordingly, the judgment of the circuit court of St. Clair county is reversed, and judgment is hereby entered in favor of the defendants. 134 Ill. 2d R. 366(a)(5).

Reversed; judgment entered.

WELCH and CHAPMAN, JJ., concur.