GINA SCHROEDER, Indiv. and as Adm'r of the Estate of Robert J. Schroeder, Deceased, *et al.*, Plaintiffs-Appellees, v. CMC REAL ESTATE CORPORATION *et al.*, Defendants-Appellants.

First District (2nd Division)   No. 86—0305

Opinion filed June 23, 1987.

Jerold S. Solovy, Laura A. Kaster, and Darryl L. De Priest, all of Jenner & Block, of Chicago, for appellants.

Brian F. Collins, Richard S. Kuhlman, Amy R. Perlman, and Andrew L. Platt, all of Foss, Schuman, Drake & Barnard, of Chicago, for appellee.

JUSTICE SCARIANO delivered the opinion of the court:

The Chicago-Milwaukee Real Estate Corporation (CMC) appeals from a summary judgment awarding $415,000 to the plaintiff Gina Schroeder (Schroeder) as compensation for the wrongful death of her husband, which occurred in 1981 when the truck he was driving collided with a train owned and operated by the Chicago, Milwaukee, St. Paul and Pacific Railroad Company (the railroad), the predecessor of CMC. The trial court found that a settlement agreement was reached on November 21, 1985, between Schroeder's counsel and an attorney for the trustee of the railroad, which was at that time in reorganization proceedings in Federal court, and that the agreement was enforceable against CMC as the railroad's successor. We affirm.

Several years prior to the filing of this suit, in December 1977, Federal District Court Judge Thomas R. McMillen approved the railroad's petition to be placed in chapter VIII bankruptcy reorganization, and a trustee was named to take over the operation of the railroad. Subsequently, in August 1979 Richard B. Ogilvie (Ogilvie), a partner in the Chicago-based law firm of Isham, Lincoln & Beale (Isham), was appointed trustee and was granted broad powers to operate the ongoing business of the railroad, as illustrated by the reorganization court's order (order No. 1), approving the railroad's petition for reorganization:

"4. *The Debtor [Trustee] is authorized in its discretion,* from time to time *until further order of this Court,* out of funds now or hereinafter in its possession, *to pay all or part,* without limiting the generality thereof:

* * *

c. *All claims for injuries, death or loss* or damage to employees, passengers or others arising from the operation of its railroad and properties

* * *

6. *Pending further order of the Court, the Debtor is authorized and empowered* to institute or prosecute in any court or before

any tribunal of competent jurisdiction all such suits and proceedings as may be necessary in its judgment for the recovery or proper protection of its property or rights, and to liquidate, compromise, adjust or make settlement, by written agreement or consent judgment or otherwise, of any thereof; and likewise *to defend and liquidate, compromise, adjust, or make settlement of any actions, proceedings or suits now pending against the Debtor* or which may hereafter be asserted or be brought in any court or before any officer, department, commission or tribunal to which the Debtor is or shall be a party; \*\*\*." (Emphasis added.)

Order No. 1 also specifically reserved to the reorganization court the authority and jurisdiction to limit both the time within which suits could be brought and claims settled.

Pursuant to the powers delineated in order No. 1, Ogilvie sold the core assets of the railroad and filed a plan of reorganization (the plan) which was modified and confirmed by the reorganization court on July 12, 1985. The plan provided that on the "Consummation Date" the railroad would cease to exist and the reorganized company (CMC) would be the owner of all the assets of the railroad free and clear of all liens and encumbrances except as specifically provided in the plan or in an order of the reorganization court. However, the plan did not provide a definite consummation date.

On November 12, 1985, the reorganization court entered "Order No. 866: Final Decree" (final decree) which established November 25, 1985, as the consummation date. Moreover, intending to clarify "certain matters involved in the consummation of the Plan and the discharge of the Trustee," the final decree also directed that:

"Five days before the approved Consummation Date, the Trustee shall file with this Court and serve on the parties a report showing the amount of Allowable Claims paid prior to the Consummation Date and the resulting amount required to be deposited in the segregated account \*\*\*."

Hence, the report referred to in the Final Decree was due to be filed by the trustee on November 20, 1985, five days prior to the established consummation date.

Schroeder filed her wrongful death action in 1983. During the summer of 1985, Brian F. Collins (Collins), Schroeder's attorney, and Thomas F. Meyer, attorney for Ogilvie as trustee, engaged in settlement discussions. In early September 1985, Elaine G. Fishman (Fishman), an attorney in the Isham law firm, contacted Collins and informed him that her office was substituting as counsel for Ogilvie as

trustee as well as for the other defendants named in the suit. Fishman was subsequently granted leave to appear on behalf of the trustee and the two other defendants and continued the extensive settlement negotiations until November 18, when Collins made a final settlement demand of $415,000. Three days later, on November 21, Fishman called Collins and informed him that the trustee accepted the demand and agreed to settle the lawsuit for $415,000. Fishman wrote a letter to Collins that same day confirming the agreement to settle, stating:

"This letter confirms our telephone conversation of today in which we agreed to settle this matter for $415,000. As I explained to you, the file is being transferred to Jenner & Block in conjunction with the discharge of the trustee and the assumption of the assets by [CMC]. Jenner & Block will do the paperwork and CMC will issue the settlement check.

s/s Elaine Fishman"

The day after receiving this letter, Collins wrote to Patrick Phillips (Phillips) of the law firm of Jenner & Block, new counsel for CMC, and advised Phillips of the settlement of the case. Collins also stated that "we would like to completely resolve this matter as soon as possible. In fact, a rapid settlement was one of the preconditions of the settlement agreement." However, on December 13 Phillips informed Collins that CMC would not settle the case for $415,000 because it believed the alleged settlement amount was more than the case was worth.

In response to CMC's rejection of the settlement amount, Schroeder filed a motion for entry of summary judgment pursuant to the agreement reached between Fishman and Collins. When the trial court held a hearing on the motion on December 18, Collins appeared on behalf of Schroeder, Fishman represented all the defendants, and Phillips was in attendance, without having filed an appearance, on behalf of CMC. At this hearing, the trial judge granted Fishman's motion to withdraw as counsel for the defendants, continued Schroeder's motion for summary judgment until December 30, granted Phillips leave to file a responsive brief by December 24, and ordered Isham "to file affidavits or other material with the Court detailing their authority to enter into settlement on behalf of the defendants."

When the court reconvened on December 30 to consider Schroeder's motion for summary judgment, Jenner & Block was granted leave to appear as CMC's counsel of record. At this hearing, counsel for CMC proposed that the settlement agreement was unenforceable because: (1) CMC was not consulted regarding the terms of the settlement prior to their being agreed upon by the parties; and (2)

the terms of the agreement were allegedly ambiguous. After reviewing the testimony and the documentary evidence, the trial judge declared that summary judgment was appropriate, stating that "I don't have any fact issues here." Consequently, a final order of summary judgment was entered on January 2, 1986, in the amount of $415,000. The trial court further found that no just cause existed to delay appeal or enforcement of the judgment (87 Ill. 2d R. 304 (a)), and CMC accordingly appealed.

■ It is well established in Illinois that a motion for summary judgment should be granted only if the pleadings, depositions, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact. (*Zych v. Jones* (1980), 84 Ill. App. 3d 647, 406 N.E.2d 70.) CMC contends there are genuine issues of material fact which preclude the granting of a summary judgment as a matter of law, and that it was entitled to an evidentiary hearing to resolve those disputed questions. The genuine issues of material fact which CMC argues exist are: (1) whether the trustee had authority to enter into the settlement agreement on November 21, 1985; (2) whether the trustee granted attorneys in his law firm authority to settle Schroeder's claim; and (3) whether there was a clear and unambiguous settlement agreement. CMC further argues that the trial court erred in denying CMC's motion for leave to conduct discovery concerning the facts and circumstances surrounding the settlement agreement.

■ However, CMC did not raise the two alleged questions of material fact concerning the authority of the trustee or his counsel in the trial court, but argued instead that the settlement was improper because, as successor to the trustee, it had a right to be consulted prior to an agreement. The two contentions relating to authority were presented for the first time in CMC's brief in this court. The rule is hoary that an issue not presented to or considered by the trial court cannot be raised for the first time on appeal, and when a party raises a question for the first time on appeal, it is ordinarily deemed to have been waived. (*Melvin v. City of West Frankfort* (1981), 93 Ill. App. 3d 425, 417 N.E.2d 260; *Webb v. Rock* (1980), 80 Ill. App. 3d 891, 400 N.E.2d 959.) We can discern no reason why this salutary rule should not be followed in the case *sub judice*. Hence, we find CMC's two points advanced in this court regarding the authority of the trustee or his counsel were waived for purposes of this appeal.

■ The next issue CMC raises is whether there was a clear and unambiguous settlement agreement. It is clear that in order to be enforceable, a settlement agreement must contain all of the essential

terms thereof. (*Kuska v. Folkes* (1979), 73 Ill. App. 3d 540, 545, 391 N.E.2d 1082, 1086.) CMC contends that the agreement lacks two essential terms: 1) a clear meaning of the term "paperwork"; and 2) a clause indicating that time was of the essence, as illustrated by the November 22 letter from Collins to Phillips. Therefore, CMC's argument continues, since the November 21 letter from Fishman to Collins lacked these essential terms, it was too vague and indefinite to be summarily enforced by the trial court.

As to the argument that the term "paperwork" is ambiguous, and therefore the contract is unenforceable, here again we are presented with an issue which we need not determine in order to properly dispose of this case. Contract language is not rendered ambiguous simply because the parties do not agree upon its meaning. (*Wilson v. Illinois Benedictine College* (1983), 112 Ill. App. 3d 932, 445 N.E.2d 901; *Bell Fuels, Inc. v. Lockheed Electronics Co.* (1985), 130 Ill. App. 3d 940, 474 N.E.2d 1312.) More importantly, the parties to the agreement herein, *i.e.*, the trustee and Schroeder, had no disagreement as to the meaning of the contract. It is only CMC, the successor to the trustee, which has a problem with the settlement. It is clear, however, that CMC is bound by agreements entered into by the trustee, as illustrated by the final decree entered in the bankruptcy court, which stated:

> "[T]he Reorganized Company [CMC] shall be liable *** for its obligations under contracts assumed by the Trustee pursuant to 6.1 of the Plan and for obligations of the Trustee during administration of the Estate ***."

In this regard, the final decree is in accord with accepted practice in reorganizations; namely, that a successor corporation is bound by the contracts of the predecessor company. (15 W. Fletcher, Cyclopedia Corporations sec. 7331, at 583 (1983).) In the case at hand, if CMC did not understand the terms of the contract, instead of denying its validity, the proper course would have been to consult with its predecessor, the trustee, the party who agreed to settle and voiced no objection concerning the agreement.

As previously noted, CMC also argues that the November 22 letter from Collins to Phillips indicated that time was of the essence to the agreement, and the failure to include a time-of-the-essence clause in the November 21 letter from Fishman to Collins rendered the agreement unenforceable since it was lacking an essential term. Though we agree with CMC's contention that a settlement agreement cannot be unilaterally altered as to material terms without the consent of both parties (*In re Marriage of Maher* (1981), 95 Ill. App. 3d

1039, 1043, 420 N.E.2d 1144), we do not see how this recitation of a well-settled principle of contract law affects the enforceability of the November 21 settlement agreement. Collins was not attempting to add a term to the contract, but rather he simply stated that "a rapid settlement was one of the preconditions of the settlement agreement." The trial court found that a valid and enforceable settlement agreement was reached by the parties on November 21, 1985; hence, the precondition had to be clearly *functus officio* when Schroeder and the trustee formalized their settlement on that date. Moreover, it is clear that a contract generally will not be held to be unenforceable simply because there is no express provision governing time of performance. In cases where the contract is silent, the law implies that performance will be within a reasonable time. (*Pel-Aire Builders, Inc. v. Jimenez* (1975), 30 Ill. App. 3d 270, 274, 332 N.E.2d 519.) Therefore, we hold that the absence of a time-of-the-essence clause does not render the agreement invalid or unenforceable.

■ We also hold that the trial court committed no error in refusing to hold an evidentiary hearing. It is true that the law in Illinois is that a trial court can enforce a settlement agreement only if it first holds an evidentiary hearing to resolve any disputed issues of material fact. For example, in *Janssen Brothers, Inc. v. Northbrook Trust & Savings Bank* (1973), 12 Ill. App. 3d 840, 843, 299 N.E.2d 431-34, the court stated:

> "Summary procedure is not \*\*\* suited to a situation in which substantial questions are present relating to the formation and terms of a settlement agreement or its consummation, and evidence or testimony is required to satisfactorily resolve the issue."

(See also *Hollobow v. Energy Resources Corp.* (1981), 94 Ill. App. 3d 331, 338, 418 N.E.2d 924.) In the case before us, however, as we have previously noted, there are no disputed questions as between the parties thereto relating to the terms or formation of the agreement. The settlement was entered into pursuant to proper authority, and neither of the parties to the contract expressed any disagreement as to the meaning of any of the terms. Hence, we cannot discern the existence of any genuine issues of material fact which would have made an evidentiary hearing imperative.

■ Nor did the trial court err in denying CMC's motion for leave to conduct discovery concerning the facts and circumstances surrounding the settlement agreement. One court has noted that a party has the right to discovery only as to disputed factual issues in connection with a requested summary enforcement of a purported settle-

764

ment agreement. (*Allen v. Alabama State Board of Education* (M.D. Ala. 1985), 612 F. Supp. 1046, 1051.) In this case, we reiterate that there is no factual dispute; therefore, discovery should not be necessary. CMC's argument that it is entitled to discovery is consequently rejected.

Accordingly, we affirm the decision of the trial court.

Affirmed.

HARTMAN and BILANDIC, JJ., concur.