GYAN P. SRIVASTAVA, Plaintiff-Appellee, v. RUSSELL'S BARBECUE, INC., Defendant-Appellant.

First District (2nd Division)   No. 87—2561

Opinion filed March 29, 1988.

Marty J. Schwartz, of Chicago, for appellant.

Sullivan & Associates, Ltd., of Chicago, for appellee.

PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

Defendant appeals summary judgment granted to plaintiff in an action for declaratory judgment construing a stock purchase agreement. The issues properly presented for review include whether: (1) defendant's action in opening a third restaurant required a payment of $25,000 to plaintiff by the terms of the agreement; and (2) the agreement is ambiguous.

Plaintiff, Gyan P. Srivastava, Joseph Saly and Robert Pearlman were shareholders in two corporations operating restaurants specializing in barbecued foods: defendant Russell's Barbecue, Inc. (Russell's), and Russell's Barbecue of Elmwood Park, Inc. (Russell's of Elmwood Park). During 1982, Saly initiated negotiations between the shareholders concerning plaintiff's sale of his holdings, and on November 17, 1982, plaintiff, Pearlman, Saly, and the two corporations signed a stock purchase agreement. In return for the sale of plaintiff's 100 shares of stock in Russell's and his 5,000 shares of stock in Russell's of Elmwood Park, he would receive $200,000 plus a $52,000 consulting fee. Plaintiff also would obtain $105,000 in return for a covenant

not to compete in five Illinois counties. The agreement further provided:

"VI. <u>EXPANSION PAYMENTS</u>

The Corporation shall have the option of adopting either of the following arrangements with Seller:

A. The sum of TWENTY-FIVE THOUSAND ($25,000.00) DOLLARS within twelve (12) months following the opening of a third 'RUSSELL's BARBECUE' format restaurant by either of the Corporations, SALY and/or PEARLMAN or a Corporation in which they or their nominees or agents own or control stock; or

B. In the event that within ten (10) years following the Closing, SALY or PEARLMAN convey all or a majority of their interest in the Corporations or cause the Corporations to convey their restaurants to a third party or parties and the compensation for such transfer or sale includes a continuing franchise fee, then PEARLMAN and SALY agree to pay to Seller a total sum equal to twenty (20%) percent of such franchise fees for the lesser of (a) the term of the franchise agreement, or (b) a period of ten years.

C. The corporation shall have no obligation to make either the payments hereunder, if at the time the payment becomes due, the Seller shall be engaged either directly or indirectly in a barbecue format restaurant."

According to deposition testimony, plaintiff was concerned with the expansion potential of the business and initially asked for $50,000 for each additional restaurant opened; he later agreed to accept $25,000 for a third restaurant and no money for any later restaurants. Plaintiff believed section VI meant he would benefit in case of expansion. Saly believed this section established alternative forms of payment with the choice up to purchasers. Plaintiff understood he would be paid if either event or both occurred.

In August 1984, a third Russell's restaurant opened. Plaintiff thereafter sought payment of the $25,000 under section VI(A). Russell's responded that it was electing to choose the method of section VI(B) to make any expansion payments.

On January 10, 1986, plaintiff filed a verified complaint for declaratory relief against Russell's, Russell's of Elmwood Park, Saly and Pearlman, under section 2—701 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—701), asserting that defendants violated section VI(A) by failing to pay him $25,000 after opening a third restaurant. Plaintiff requested that the circuit court declare the rights

of both parties in regard to expansion payments, find that defendants had exercised option VI(A), direct them to pay plaintiff accordingly and award him costs.

On February 18, 1986, defendants moved to dismiss the complaint for failure to state a cause of action, alleging the agreement gave defendants a choice of options and defendants had chosen the section VI(B) option. On June 17, 1986, the circuit court entered an order denying the motion to dismiss. All defendants filed verified answers on July 14, 1986, stating no payment was due plaintiff. Discovery was conducted, including depositions of Saly and of plaintiff. Plaintiff filed a motion for summary judgment on March 31, 1987, attaching the agreement, plaintiff's affidavit that no "interests in any Russell's Barbe[c]ue restaurant corporation [were conveyed] in a transfer or sale which includes a continuing franchise fee," and excerpts from Saly's deposition.

On July 16, 1987, the circuit court held a hearing. Plaintiff asserted defendants had chosen section VI(A) by their action in opening a third restaurant. Defendants replied that opening the new restaurant only triggered their election of options and they had selected section VI(B) in their letter of June 12, 1985. The circuit court held that defendants had chosen section VI(A) by virtue of their conduct. The court stated that sections VI(A) and VI(B) were alternatives; since Russell's had adopted section VI(A), plaintiff no longer had rights under section VI(B).

On July 24, 1987, the circuit court entered an order *nunc pro tunc* July 16, 1987, requiring that Russell's pay plaintiff $25,000 pursuant to section VI(A), interpreting sections VI(A) and VI(B) as mutually exclusive, declaring that Russell's had no further obligations under section VI, and dismissing all other defendants with prejudice. Russell's appeals. No cross-appeal was filed by plaintiff.

I

Russell's first alleges error in the circuit court's interpretation of the stock purchase agreement and contends that it had the right to elect alternative methods of performance and exercised that right by its letter of June 12, 1985, invoking section VI(B). Russell's asserts that the mere occurrence of events mentioned in sections VI(A) and VI(B) did not constitute an election because the agreement specifically provided that the corporation had the option of choosing. Plaintiff responds that the contract set forth two options for expansion payments and that Russell's adopted section VI(A) by its action in opening an additional restaurant without any provision for payment of a franchise

fee, which then could have triggered the option available in section VI(B).

■ Summary judgment, while a salutary procedure in administering justice, should be granted cautiously so that no party is denied its right to trial in the presence of conflicting facts and inferences. (*In re Estate of Bresler* (1987), 159 Ill. App. 3d 535, 539, 510 N.E.2d 1057, *appeal denied* (1987), 116 Ill. 2d 555; *La Salle National Bank v. Illinois Housing Development Authority* (1986), 148 Ill. App. 3d 158, 161, 498 N.E.2d 697.) Summary judgment is appropriate, however, when the pleadings, depositions, affidavits and other evidence show there is no triable issue of material fact and the movant is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005(c); *In re Estate of Bresler,* 159 Ill. App. 3d at 539.) Construing a contract is a matter of law suitable for summary judgment. *In re Estate of Bresler,* 159 Ill. App. 3d at 539; *La Salle National Bank,* 148 Ill. App. 3d at 161.

■ The primary object of contract construction is to give effect to the intention of the parties. (*Martindell v. Lake Shore National Bank* (1958), 15 Ill. 2d 272, 283, 154 N.E.2d 683; *Freeland v. Edwards* (1957), 11 Ill. 2d 395, 401, 142 N.E.2d 701.) That intention should be ascertained from the language of the contract. (*Wil-Shore Motor Sales, Inc. v. Continental Illinois National Bank & Trust Co.* (1984), 130 Ill. App. 3d 167, 172, 474 N.E.2d 376; see *A. A. Conte, Inc. v. Campbell-Lowrie-Lautermilch Corp.* (1985), 132 Ill. App. 3d 325, 328-29, 477 N.E.2d 30.) Clear and unambiguous contract terms must be given their ordinary and natural meaning. (*In re Estate of Bresler,* 159 Ill. App. 3d at 539; *Purolator Security, Inc. v. Wells Fargo Alarm Service* (1986), 141 Ill. App. 3d 1106, 1111, 491 N.E.2d 161.) Contracts should be interpreted as a whole, giving meaning and effect to each provision thereof. (*Martindell v. Lake Shore National Bank,* 15 Ill. 2d at 283; *St. John v. City of Naperville* (1987), 155 Ill. App. 3d 919, 923, 508 N.E.2d 1128.) Contracts imply good faith and fair dealing; when an instrument is susceptible of two constructions, an interpretation which imputes bad faith to a party or is inequitable should be avoided. *Martindell v. Lake Shore National Bank,* 15 Ill. 2d at 286; see *Business Development Services, Inc. v. Field Container Corp.* (1981), 96 Ill. App. 3d 834, 839, 422 N.E.2d 86.

■ In the case *sub judice*, the agreement provided that Russell's had the option of adopting either of two arrangements with seller: to pay $25,000 within one year of opening a third restaurant or to pay 20% of any franchise fees generated within 10 years for the lesser of the term of the franchise agreement or 10 years. No wording in the

contract specified that Russell's would make a written election and promptly notify the seller. Instead, using the ordinary and natural meaning of the words involved, it is clear that adoption of an arrangement by action was contemplated. The circuit court correctly found that opening a third restaurant compelled a payment of $25,000 and that negotiating a continuing franchise fee required another type of payment.

Russell's interpretation that the events specified merely trigger its making a written election not only ignores the agreement wording, but raises an issue of bad faith and inequitable dealing. There was no evidence that the third restaurant was to be a franchise operation susceptible to section VI(B) language. The intention of the parties, as indicated by section VI, was to provide the seller with compensation for payments resulting from certain types of business expansion. Under Russell's interpretation, however, it could prevent plaintiff from receiving any such payments by merely choosing the option that failed to correspond to its action.

Defendant's reliance on three cases upholding the right of a promisor to choose between promises in the alternative is unavailing, as none of those cases specify that such an election must be made by written notice. (*Fidelity Federal Savings & Loan Association v. Pioneer National Title Insurance Co.* (S.D. Ill. 1977), 428 F. Supp. 1382, 1384, 1387; *Sperry & Hutchinson Co. v. Siegel, Cooper & Co.* (1923), 309 Ill. 193, 194-201, 140 N.E. 864; and *Standard Distilling Co. v. Consolidated Adjustment Co.* (1910), 157 Ill. App. 215, 216-17.) The *Standard Distilling* court found no evidence that indicated defendant there did not elect to continue its service or did not continue such service, thereby allowing for selection by performance.

Russell's also suggests. that election by conduct may occur only if remedies available are irreconcilably inconsistent. The doctrine of election of remedies is inapplicable here, as there is no threat of double compensation or of defendant being misled by plaintiff's conduct or of application of *res judicata*. *Builders Plumbing Supply Co. v. Zambetta* (1986), 143 Ill. App. 3d 188, 190-91, 492 N.E.2d 977; *Casati v. Aero Marine Management Co.* (1980), 90 Ill. App. 3d 530, 536-37, 413 N.E.2d 122.

Where a contract provided both a lease option and a right of first refusal, invoking the right of first refusal was held to bar plaintiff from utilizing its lease option to block any sale to a third party, since to do so would effectively neutralize the right of first refusal. Conflicting contract provisions should be reconciled if possible so all parts of a contract will be given effect. (*National Aircraft Leasing, Ltd. v.*

*American Airlines, Inc.* (1979), 74 Ill. App. 3d 1014, 1018-23, 394 N.E.2d 470.) In order to give effect to all provisions of the instant agreement, Russell's cannot neutralize section VI(A) conduct by writing a letter invoking section VI(B), particularly where no franchise sale was undertaken.

## II

Russell's alternatively argues that the circuit court erred in granting summary judgment because the agreement is ambiguous, presenting a question of fact, since the parties interpreted the agreement differently and the circuit court advanced a third interpretation. Plaintiff replies that no issues of material fact are disputed and suggests Russell's waived this issue by failing to raise it in the circuit court.

■ An issue not presented to or considered by the circuit court cannot be raised on review for the first time. (*Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 147, 324 N.E.2d 417; *McKanna v. Duo-Fast Corp.* (1987), 161 Ill. App. 3d 518, 528, 515 N.E.2d 157; *Schroeder v. CMC Real Estate Corp.* (1987), 157 Ill. App. 3d 757, 761, 510 N.E.2d 1045.) When, however, facts to support a theory have been raised in argument and in affidavits or depositions before the circuit court without objection, an appellant can raise its theory on appeal. (See *Williams v. Alfred N. Koplin & Co.* (1983), 114 Ill. App. 3d 482, 486, 448 N.E.2d 1042.) In the instant case, Russell's presented its theory of the agreement to the circuit court in argument and in Saly's deposition. No objection was made. Plaintiff's and Saly's depositions furnished the circuit court with conflicting explanations of section VI, implicitly supporting the argument that the agreement is ambiguous.

■ The presence of an ambiguity in a document is a question of law; an ambiguity exists if words used can be interpreted in more than one sense. (*In re Estate of Bresler,* 159 Ill. App. 3d at 540; see *Chicago White Metal Casting, Inc. v. Treiber* (1987), 162 Ill. App. 3d 562, 570, 517 N.E.2d 7.) Contract language is not ambiguous simply because the parties do not agree upon its meaning. (*Schroeder v. CMC Real Estate Corp.,* 157 Ill. App. 3d at 762; *Bell Fuels, Inc. v. Lockheed Electronics Co.* (1985), 130 Ill. App. 3d 940, 945, 474 N.E.2d 1312.) The agreement here is not ambiguous. No wording in section VI states or implies that the opening of a third restaurant, provided for in section VI(A), could trigger payment under section VI(B) or that conveying the corporation with a continuing franchise fee arrangement, as provided for in section VI(B), could trigger payment under section VI(A).

## III

■ Plaintiff argues that the circuit court unnecessarily and incorrectly determined that the options in sections VI(A) and VI(B) are mutually exclusive. Plaintiff cites cases in which the words "either" and "or" are used in a conjunctive sense (*Chidester v. Springfield & Illinois South Eastern Ry. Co.* (1871), 59 Ill. 87, 89; *Merchants Loan & Trust Co. v. Ummach* (1923), 228 Ill. App. 67, 76) and further suggests that the agreement uses the words "and" and "or" interchangeably. Russell's asserts that plaintiff has waived this issue by failing to file a cross-appeal.

In the absence of a cross-appeal, matters raised by an appellee are not properly before the reviewing court, which is limited to issues raised by appellant. (*Bryant v. Lakeside Galleries, Inc.* (1949), 402 Ill. 466, 471, 84 N.E.2d 412; *National Bank v. City of Lexington* (1985), 138 Ill. App. 3d 805, 809, 486 N.E.2d 967.) Plaintiff has not filed a cross-appeal in the present case and is foreclosed from raising this issue.

Accordingly, the decision of the circuit court of Cook County requiring Russell's to pay plaintiff $25,000 must be affirmed.

Affirmed.

STAMOS and BILANDIC, JJ., concur.