# Illinois Official Reports

## Appellate Court

*County Line Nurseries & Landscaping, Inc. v. Glencoe Park District*,
2015 IL App (1st) 143776

| | |
|---|---|
| Appellate Court Caption | COUNTY LINE NURSERIES AND LANDSCAPING, INC., By and Through Its Bankruptcy Trustee, Plaintiff-Appellant, v. GLENCOE PARK DISTRICT, Defendant-Appellee. |
| District & No. | First District, Third Division<br>Docket No. 1-14-3776 |
| Filed | December 23, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-M2-002051; the Hon. Roger G. Fein, Judge, presiding. |
| Judgment | Affirmed in part, reversed in part, and remanded. |
| Counsel on Appeal | Gauthier & Gooch, of Wauconda (Thomas W. Gooch III and Sabina D. Walczyk, of counsel), for appellant.<br><br>Ancel, Glink, Diamond, Bush, DiCianni & Krafthefer, P.C., of Chicago (Robert K. Bush, Derke J. Price, and Gregory W. Jones, of counsel), for appellee. |

PRESIDING JUSTICE MASON delivered the judgment of the court, with opinion.
Justices Fitzgerald Smith and Lavin concurred in the judgment and opinion.


**OPINION**

¶ 1        County Line Nurseries & Landscaping, Inc., sued the Glencoe Park District for breach of a landscaping services contract, and the Park District countersued for County Line's alleged failure to perform under the same contract. After several months of litigation, the Park District alleged that the parties orally agreed to settle and when County Line refused to proceed with the settlement, the Park District moved to enforce the oral agreement. The trial court granted the Park District's motion, finding that County Line's denial that it had agreed to settle was not credible and it was apparent that County Line's president "changed his mind after entering into the settlement agreement." The trial court also sanctioned County Line for violating its orders to appear through substitute counsel and ordered it to pay the attorney fees incurred by the Park District as a result of that violation. County Line appeals, arguing that the trial court erred (i) in finding that County Line agreed to the settlement, and (ii) in imposing sanctions. We affirm the trial court's order enforcing the settlement agreement, but reverse the sanction award and remand for further proceedings.

¶ 2                                    BACKGROUND
¶ 3        County Line contracted in 2007 to perform landscaping services for the Park District. In September 2013, County Line filed a breach of contract suit against the Park District, alleging that the Park District caused it to incur over $60,000 in additional costs beyond the contract's scope. The Park District counterclaimed, seeking over $40,000 in damages for County Line's alleged failure to perform its obligations under the contract.

¶ 4        Throughout the litigation, County Line was represented by a number of different attorneys. County Line was initially represented by the law firm of Steven A. Wright, P.C. Less than six months after the lawsuit was filed, Wright withdrew and the law firm of Jonathan P. Remijas filed a substitute appearance. A short time later, Remijas also moved to withdraw. The trial court granted the motion and gave County Line until May 20, 2014, to appear through new counsel.

¶ 5        Despite this order, County Line failed to have counsel appear on its behalf for the next several court dates, occasioning multiple extensions by the trial court. Specifically, on May 29, 2014, James Kenney, an attorney with the law firm of Saunders, Condon & Kenney, attended a status hearing and addressed the court. Kenney had not filed an appearance on County Line's behalf, but informed the court that he had spoken with County Line's President, Michael Collins, and was reviewing the file. The court continued the matter to June 10 and ordered County Line to file an appearance by that date.

¶ 6        On June 10, Kenney again appeared, despite not having an appearance on file, and requested another continuance. The court ordered County Line to file an appearance by June

18, indicating the case would be dismissed for want of prosecution failing compliance with the order.

¶ 7    On June 18, Kenney still had not filed an appearance, but again attended the status hearing to request more time. Collins was also present for the hearing (but later claimed to be "surprised" that Kenney was there). The order entered that day directed County Line to file and serve an appearance by June 26, again under threat of dismissal.

¶ 8    In the courtroom after the status hearing, Kenney raised the prospect of settlement with counsel for the Park District, Gregory Jones, and Kenney and Collins later met with Jones outside the courtroom. Collins offered to settle the parties' respective claims through a one-time payment of $17,500 to County Line. Jones told Collins and Kenney that his client wished to settle the case, that Collins' demand was in line with the Park District's prior offers and that Jones believed the Park District would likely agree to settle on those terms. Jones agreed to contact Kenney by phone no later than Friday, June 20, to confirm his client's agreement and told Kenney and Collins that pending confirmation of the Park District's agreement, he considered the case settled. Collins and Jones then shook hands to confirm their agreement.

¶ 9    Following the hearing, Jones determined that the Park District would agree to the settlement and on the morning of June 19, he telephoned Kenney and informed him of that fact. Later that day, Jones e-mailed Kenney a release and asked Kenney to return the release signed by Collins by June 24 so that the case could be dismissed at the next status on June 26.

¶ 10    On the morning of June 24, Jones was contacted by another attorney, Joshua Slade, who informed Jones that Collins had inquired about representation. When Jones informed Slade of the settlement, Slade denied any knowledge of that fact.

¶ 11    Jones then called Kenney to inquire further. Kenney disclaimed any knowledge that Collins had contacted other lawyers, confirmed that he had sent Collins the release on June 21, and indicated that he had been unable to contact Collins since then, despite several attempts.

¶ 12    Finally, on June 26, attorney Zohaib Ali of M. Hedayat & Associates, P.C. appeared in court and represented that his firm had filed an appearance for County Line. Ali told the court he was unaware of any settlement and requested 30 days to review and familiarize himself with the case. The matter was continued for status on July 24, 2014.

¶ 13    The record contains an appearance signed by Ali date-stamped June 26, 2014. Contact information, presumably for the firm, including an address and telephone number, is listed on the appearance. As discussed in more detail below, County Line eventually claimed in response to the Park District's petition for attorney fees that Ali handed a copy of his appearance to Jones on June 26, but the circuit court clerk's electronic docket does not reflect the filing of the appearance on that day.[1] No notice of filing or certificate of service is contained in the record.

_____

[1] The circuit court clerk's electronic docket reflects that on June 26, County Line's *first* counsel, Steven A. Wright, filed an appearance for County Line, but, as noted, Wright had withdrawn months earlier. The docket also states that on July 21, County Line appeared *pro se*. Neither party offers an explanation for these entries. The clerk's docket does not reflect any appearance filed by M. Hedayat & Associates on June 26 or at any time thereafter.

¶ 14    When Jones attempted to confirm that Ali's appearance had been filed by checking the electronic docket and determined that it had not been entered on the docket, he did not contact Ali to inquire further. Instead, on July 1, the Park District filed a motion to enforce the oral settlement agreement and for sanctions as a result of County Line's claimed failure to appear through counsel by June 26.

¶ 15    In its motion, supported by Jones's affidavit, the Park District recounted the events leading up to the oral settlement agreement. Jones also averred that neither he nor the Park District had been served with a copy of Ali's appearance as of July 1. The Park District requested that the settlement be enforced and, separately, that the court sanction County Line for (i) violating its repeated orders to have counsel appear on its behalf and (ii) falsely stating on June 26 that Ali had filed an appearance on its behalf. The motion did not request an award of attorney fees and costs incurred in seeking to enforce the oral settlement agreement, but it did request an award of fees and costs incurred "as a result of the misconduct." A certificate of service reflects that a copy of the Park District's motion was served on both Ali and County Line.

¶ 16    On August 14, 2014, County Line filed a response in which it denied that it entered into any settlement. It admitted that Kenney was present at the June 18 status hearing and approached Jones to discuss the possibility of settlement but stated that Kenney had not been retained by County Line and was not authorized to make settlement offers. No affidavit from Kenney was submitted, but Collins filed an affidavit in which he admitted that he discussed the topic of settlement outside the courtroom with Jones and Kenney on June 18. Collins denied that any agreement was reached, describing the discussion as "minimal" and merely a prelude to further settlement discussions. Collins claimed he was "surprised" by Kenney's appearance at the status hearing, denied authorizing Kenney to make or accept any settlement offer on behalf of County Line, and stated that he rejected the $17,500 figure mentioned by Jones. When he left the courthouse on June 18, Collins "did not believe" the case was settled.

¶ 17    With respect to the Park District's request for sanctions as a result of County Line's failure to appear through counsel by June 26, County Line's response represented that Ali's appearance had been filed on June 26 and attached a copy of an undated facsimile cover sheet forwarding a copy of the appearance to Jones. County Line did not contend Ali handed a copy of his appearance to Jones on June 26 at the status hearing. Further, in his affidavit, Collins swore that he retained M. Hedayat & Associates to represent him on *July* 26, 2014, and that on August 4, 2014, "Mr. Hedayat forwarded Glencoe's Motion to Enforce Settlement Agreement and For Sanctions" to him. Collins claimed this was the first he learned of the alleged settlement agreement, although, as noted, the Park District's motion was served directly on County Line a month earlier.

¶ 18    County Line requested that the court deny enforcement of the settlement, but it did not suggest that an evidentiary hearing was necessary. Instead, based on Collins' affidavit, County Line argued that the court could find that there was no meeting of the minds and, hence, no settlement.

¶ 19    In its reply, the Park District attached a dated copy of the facsimile transmission of Ali's appearance reflecting that it was not sent to Jones until July 30, 2014. In addition to pointing out that it had not consented to service by facsimile and, thus, had yet to be formally served with Ali's appearance, the Park District pointed to Collins' sworn statement that he did not retain the firm until July 26, a month after the deadline for doing so. In its prayer for relief,

the Park District requested "sanctions and a monetary penalty" against County Line and its counsel for violating the court's orders and "willfully making a false representation" to the court. With respect to the monetary penalty, the Park District again requested an amount sufficient to reimburse it for attorney fees and costs "incurred as a result of the misconduct."

¶ 20　　On September 23, 2014, the trial court granted the Park District's motion to enforce the settlement and impose sanctions on County Line. Regarding the settlement, the trial court stated that Jones's affidavit was "credible," and his actions were consistent with his affidavit: he would not have taken the time to prepare a release and transmit it to Kenney unless an agreement had actually been reached. The court also found that Collins' affidavit was "not credible" and that Collins merely "changed his mind after entering into the settlement agreement." Alternately, the court found that, based on Collins' presence during the discussion outside the courtroom on June 18 and his failure to repudiate Kenney's actions in engaging in settlement discussions, Collins ratified Kenney's acts on behalf of County Line. Accordingly, the court granted the motion to enforce the settlement agreement.

¶ 21　　Regarding the Park District's request for sanctions, the court found that Ali filed an appearance on June 26, but that he did not serve a copy of his appearance on the Park District's counsel until 35 days later, in violation of the court's order to serve the appearance by June 26. This delay caused the Park District to incur attorney fees in inquiring about the appearance and filing a motion for sanctions. Based on this finding, the court awarded the Park District the sum of $350 "for such fees and expenses." Despite this award, the court further granted the Park District leave to submit a verified petition for attorney fees and costs in excess of the award "setting forth a detailed explanation of the services performed subsequent to June 18, 2014" through September 23, 2014, the date of the order. The court set a briefing schedule on the petition and stated that it would rule on any petition after reviewing the parties' briefs and without oral argument.

¶ 22　　The Park District later filed a verified fee petition seeking reimbursement for the costs and fees it incurred in prosecuting the motion for sanctions, requesting a total of $8,673.76. The petition included a detailed breakdown of 44.25 hours spent by the Park District's attorneys between June 19 and September 23, as well as support for $658.56 in additional costs. As discussed in more detail below, a substantial portion of the requested fees were not related to County Line's violation of the court's June 18 order.

¶ 23　　In County Line's response, County Line did not challenge any specific line items in the Park District's fee petition as excessive, duplicative or inadequately described, nor did it object to the trial court's declaration that it would rule on the fee petition without oral argument or an evidentiary hearing. Instead, County Line argued for the first time that sanctions should not be imposed because Ali personally tendered a copy of his appearance to the Park District's counsel on June 26. County Line attached affidavits from Mazyar Hedayat, the president of the firm, and Theresa Giblin, a firm paralegal. Both Hedayat and Giblin stated that on June 26, after Ali returned from court, he told them that he had delivered a copy of his appearance to the Park District's counsel. No affidavit from Ali was attached nor did County Line offer any explanation for its absence.

¶ 24　　The Park District filed a reply in which it argued that the court should not consider County Line's response, since it was not verified. It also argued that the Hedayat and Giblin affidavits contained inadmissible hearsay regarding what Ali told them after returning from

court, and it attached an affidavit from Jones stating that Ali did not provide him with a copy of his appearance at the June 26 hearing.

¶ 25 The trial court granted the Park District's fee petition in full. It found that the services rendered were appropriate and necessary, and both the time expended and the hourly rates were fair and reasonable. It stated that County Line's response was not verified, and "on a substantive legal and factual basis, it is misplaced, unpersuasive and unavailing."

¶ 26 ANALYSIS

¶ 27 County Line raises three contentions on appeal: (i) the parties never reached an oral settlement agreement; (ii) the trial court erred in sanctioning County Line; and (iii) the trial court erred in granting the Park District's fee petition without holding an evidentiary hearing on the reasonableness of the fees sought, which were excessive. We consider these contentions in turn.

¶ 28 Existence of the Settlement Agreement

¶ 29 County Line argues that the settlement agreement was unenforceable for three reasons. First, there was no meeting of the minds, since Collins did not intend to settle the case on June 18, 2014, but thought that he was only entering into preliminary negotiations that might eventually lead to a settlement. Second, Kenney lacked authority to settle the lawsuit. Third, Collins did not ratify the settlement, because his conduct after the June 18 meeting (*i.e.*, retaining new counsel) showed his intent to continue litigating the case. None of these contentions has merit.

¶ 30 In its brief, County Line advocates a manifest weight of the evidence standard of review, citing *K4 Enterprises, Inc. v. Grater, Inc.*, 394 Ill. App. 3d 307, 312 (2009), and under normal circumstances where trial courts make factual determinations, that would be the correct standard.[2] But *K4 Enterprises* is inapposite as that case involved an oral settlement agreement reached by the parties (without counsel) in the judge's presence. *Id.* at 308-09. Thus, the trial judge possessed personal knowledge of the parties' settlement discussions and could draw on that knowledge to resolve the factual issue of whether the parties had agreed to settle.

¶ 31 Here, the trial court was called upon to determine what happened outside of court on June 18 and to resolve the conflicts in the parties' respective affidavits regarding those events. Normally, that task would call for an evidentiary hearing so that the court could assess, based on testimony and other evidence, which party's version was more credible. And if County Line had requested an evidentiary hearing on the issue, the failure to conduct one would likely have been reversible error. *Schroeder v. CMC Real Estate Corp.*, 157 Ill. App. 3d 757, 763 (1987) (ordinarily, enforcement of settlement agreement without evidentiary hearing is not appropriate where there are disputed issues of material fact).

¶ 32 But neither party suggested that an evidentiary hearing was necessary and both asked the court, on the basis of the competing affidavits, to resolve the issue, which the court proceeded to do. Consequently, we believe that under the unique circumstances presented

---

[2]For its part, the Park District's brief does not articulate any standard of review applicable to the trial court's determination that the parties reached an enforceable settlement agreement.

here, we should apply *de novo* review to the trial court's determination that the parties reached an enforceable oral settlement. *City of Chicago v. Ramirez*, 366 Ill. App. 3d 935, 946 (2006) (trial court's decision to enforce settlement agreement without evidentiary hearing is reviewed *de novo*). Since the trial court decided who to believe based solely on the competing affidavits, we will examine this same material to determine if the court was wrong as a matter of law.

¶ 33    A settlement agreement is a contract and is governed by principles of contract law. *Solar v. Weinberg*, 274 Ill. App. 3d 726, 731 (1995). Oral settlement agreements are enforceable if there is an offer, an acceptance, and a meeting of the minds between the parties regarding the terms of the agreement. *Johnson v. Hermanson*, 221 Ill. App. 3d 582, 584 (1991). A meeting of the minds exists whenever the parties' conduct objectively indicates an agreement to the terms of the settlement, even if one or more parties did not subjectively intend to be bound. *Urban Sites of Chicago, LLC v. Crown Castle USA*, 2012 IL App (1st) 111880, ¶ 51; *Steinberg v. Chicago Medical School*, 69 Ill. 2d 320, 331 (1977) (" 'secret intent [is] immaterial' " to a meeting of the minds (quoting 1 Samuel Williston, A Treatise on the Law of Contracts § 22, at 46-48 (3d ed. 1957))).

¶ 34    Here, Jones's affidavit averred that Collins offered to settle the case for $17,500, and Jones said that he would accept that offer contingent on the Park District's approval. The two of them shook hands to affirm their understanding of the settlement terms and Jones indicated that he would forward a release to Kenney for Collins to sign. Under this version of events, which the trial court found to be "credible" (at least on paper), the parties objectively manifested their intent to settle the case. Jones's conduct in later preparing and forwarding to Kenney the release further supports the conclusion that the parties agreed to settle the case. Collins did not deny that he shook hands with Jones outside the courtroom on June 18 and couched his recitation of the events in ambiguous language, *e.g.*, "[m]y *understanding* of those discussions was that they were introductory in nature"; "I *rejected the idea* of waiting around for a $17,500 settlement"; "I *did not believe* I had agreed to a settlement." (Emphases added.) Even if Collins secretly harbored a belief that no settlement had been reached, or he believed that the negotiations were preliminary and nonbinding, his subjective belief does not preclude a finding that there was a meeting of the minds. *Steinberg*, 69 Ill. 2d at 331. Thus, our review of the materials before the trial court does not lead us to conclude that the trial court erred, as a matter of law, in finding that the parties reached an enforceable settlement agreement.

¶ 35    As an alternative ground for enforcing the settlement, the trial court found that even if Kenney lacked authority to settle the case, his actions were ratified by Collins, who was present at the June 18 meeting and did not inform Jones that Kenney lacked authority or otherwise repudiate Kenney's negotiations. Although we agree that the circumstances of this case support a finding that Collins ratified Kenney's actions, we need not address this issue further, given our conclusion that Collins himself agreed to settle the case with the Park District for $17,500.

¶ 36                                    Propriety of Sanctions

¶ 37    County Line next contends that the trial court erred both in imposing sanctions for its violation of the court's June 18 order to file and serve its appearance by June 26 and in the amount of sanctions awarded. As noted earlier, as far as the record reflects, County Line filed

its appearance on June 26, but it failed to serve that appearance on the Park District until over a month later. We agree that the trial court abused its discretion in awarding the Park District the entirety of the fees and costs it incurred between June 19 and September 23 because the majority of those fees were unrelated to County Line's violation of the court's June 18 order. We therefore reverse and remand for a new sanctions hearing.

¶ 38     Before we address the propriety of the particular sanction awarded in this case, we believe it is advisable to discuss the method by which individuals can obtain a date-stamp on documents in the circuit court clerk's office. A document can be filed in person at the clerk's office by handing the document to an employee who stamps and retains it. But the clerk's office also has self-service kiosks where people can date-stamp their filings and leave them in a box (with that day's date on it) to be scanned later and placed into the court file. Judges and litigants have reported substantial delays between the date that self-stamped documents are placed in the box and the date that they actually appear on the clerk's electronic docket and in the court file. In such cases, the clerk's docket would not reflect the filing and there would be nothing in the court file until the self-stamped documents were scanned. To complicate matters, no one from the clerk's office actually monitors the self-service kiosks to make sure those using them leave originals in the box. Thus, a party that wanted to be able to represent that it had filed something could date-stamp the filing at the self-service kiosk, but not leave it in the box and later blame the lack of entry in the clerk's docket on the clerk's office. We make these observations because the Park District sought the imposition of a penalty for Ali's claimed willful misrepresentation that he had filed an appearance and because trial judges should be aware of the potential pitfalls in resolving what, on the surface, appear to be straightforward issues regarding the date on which a particular document has been filed.

¶ 39     Such concern is pertinent here given the particular facts of this case. Despite the fact that Ali's appearance bears a date stamp of June 26, Collins stated in his affidavit that he retained Ali's firm on *July* 26 (and County Line has never argued that this was a typo). The July 26 retention date is consistent with the July 21 entry in the court's electronic docket reflecting that County Line appeared *pro se*. There would have been no reason for County Line to attempt to proceed *pro se* (which a corporation cannot do; see *Berg v. Mid-America Industrial, Inc.*, 293 Ill. App. 3d 731, 737 (1997)) if, in fact, it had retained and appeared through counsel on June 26.

¶ 40     The July retention date is also consistent with the statements of Hedayat and his paralegal in their affidavits that County Line had only made a *partial* payment of a retainer by June 26. Since County Line had failed to pay the entirety of the retainer, it stands to reason that the Hedayat firm may have been unwilling to fully commit to the case by actually filing its appearance, particularly given that it was the third firm to appear for County Line. It is further consistent with the firm's delay until July 30 in forwarding a copy of its appearance to counsel for the Park District. If, in fact, the firm appeared on June 26, the logical response upon receiving the Park District's motion for sanctions would have been to promptly fax a copy to opposing counsel. Additionally, Ali himself did not file any affidavit stating that he filed his appearance on June 26, an unexplained omission.

¶ 41     Finally, we observe that Collins stated in his affidavit that Hedayat waited until August 4 to forward him a copy of the Park District's July 1 motion to enforce the settlement agreement. This is an inexplicably lengthy delay if Ali's representation of County Line began

on June 26, but it is more plausible with a July 26 retention date. For all of these reasons, as well as the issues with the self-service kiosks outlined above, we think there is cause to doubt that Ali actually filed the appearance on June 26. But, in any event, resolving such uncertainties is the province of the trial court.

¶ 42　　　As authority for its request for sanctions, the Park District cited Illinois Supreme Court Rule 219(c) (eff. July 1, 2002), which contemplates sanctions for a person's failure to comply "with any order entered under these rules." In lieu of or in addition to other relief specifically listed, the rule authorizes the court, whether on a party's motion or on its own initiative, to

> "impose upon the offending party or his or her attorney, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of reasonable expenses incurred *as a result of the misconduct*, including a reasonable attorney fee, and when the misconduct is wilful, a monetary penalty." (Emphasis added.) *Id.*

The purpose of Rule 219(c) sanctions is to compel compliance with the court's orders. *Cedric Spring & Associates, Inc. v. N.E.I. Corp.*, 81 Ill. App. 3d 1031, 1035 (1980). Moreover, in the event of a willful violation of a court order, the penalty should be proportionate to the gravity of the violation. *Gonzalez v. Nissan North America, Inc.*, 369 Ill. App. 3d 460, 469 (2006) (overly harsh and disproportionate sanction was an abuse of discretion). A court's decision to impose Rule 219(c) sanctions will only be reversed when the record establishes a clear abuse of discretion. *Sander v. Dow Chemical Co.*, 166 Ill. 2d 48, 67 (1995).

¶ 43　　　County Line first argues that imposition of sanctions was an abuse of discretion because the record shows that County Line complied with the June 18 order. We disagree. Although County Line claims that Ali *filed* his appearance in a timely manner, the stamped copy of the appearance does not necessarily support this conclusion for the reasons just discussed. Further, with respect to service of the appearance, as noted above, County Line failed to submit an affidavit from Ali, the only person who could have competently attested to the claimed fact that a copy of his appearance was tendered to Jones on June 26. The affidavits from Ali's colleagues to the effect that Ali told them he had given Jones of copy of the appearance when Ali returned from court that day are hearsay. Ill. R. Evid. R. 801(c) (eff. Oct. 15, 2015) (defining hearsay as "a statement, other than one made by the declarant ***, offered in evidence to prove the truth of the matter asserted"); *Radtke v. Murphy*, 312 Ill. App. 3d 657, 663-64 (2000) (a third party's comments recited in an affidavit constitute inadmissible hearsay). Based on the admissible evidence presented to the trial court, we find that Ali's appearance was not served on the Park District until July 30. Thus, because County Line did not support its belated claim that it served the appearance by June 26, the trial court did not err in finding that County Line violated the June 18 order.

¶ 44　　　Furthermore, even if there was competent evidence on the point, County Line did not raise its claim that Ali tendered a copy of the appearance to Jones on June 26 until its response to the Park District's fee petition; it failed to make any such claim in its response to the motion for sanctions, when it would have been logical to do so. Thus, the trial court properly disregarded this argument as it was not timely raised. See, *e.g.*, *North River Insurance Co. v. Grinnell Mutual Reinsurance Co.*, 369 Ill. App. 3d 563, 572 (2006) (new

factual arguments or legal theories raised in motion for rehearing are improper and considered to be forfeited).

¶ 45    The Park District additionally argues that County Line's response to the Park District's fee petition should have been disregarded because the response was not verified. Although County Line does not contest this point, we disagree with the Park District. Section 2-605(a) of the Code of Civil Procedure provides that if a party verifies a pleading by oath, "every subsequent *pleading* must also be verified, unless verification is excused by the court." (Emphasis added.) 735 ILCS 5/2-605(a) (West 2012). But a fee petition is not a "pleading," and neither is a response to a fee petition. *Cf. Firkus v. Firkus*, 200 Ill. App. 3d 982, 987 (1990) (posttrial motion to reconsider is not a pleading requiring verification); *Interstate Material Corp. v. City of Chicago*, 150 Ill. App. 3d 944, 958 (1986) (motion for preliminary injunction is not a pleading requiring verification). A party can challenge a fee award without verifying its response; for instance, it can challenge duplicate time entries, double billing, and inadequate description of services rendered, all of which are obvious defects on the face of the petition. If the opposing party wants to challenge the hourly rate, it must file a counteraffidavit, not because the response must be "verified," but because without an affidavit contradicting the affidavit of petitioning counsel that the rates are reasonable, the court has no basis for rejecting the rates. Accordingly, we reject the Park District's contention and the trial court's finding that County Line was required to verify its response to the fee petition.

¶ 46    County Line's next argument is that the trial court's fee award of $8,673.76 was improper because the trial court failed to hold an evidentiary hearing on the Park District's fee petition. But County Line never asked the trial court to hold an evidentiary hearing, nor did it raise this point in its response to the fee petition or otherwise. Thus, any objection to the lack of an evidentiary hearing has been forfeited. *Cambridge Engineering, Inc. v. Mercury Partners 90 BI, Inc.*, 378 Ill. App. 3d 437, 453 (2007) (arguments not raised before the trial court are forfeited). Moreover, we note that trial courts faced with fee petitions are not required to hold evidentiary hearings as a matter of course. *Young v. Alden Gardens of Waterford, LLC*, 2015 IL App (1st) 131887, ¶ 113; see also *Raintree Health Care Center v. Illinois Human Rights Comm'n*, 173 Ill. 2d 469, 495 (1996) (stating that "courts frequently award attorney fees *** without holding evidentiary hearings").

¶ 47    Having found that the trial court's decision to sanction County Line for its noncompliance with the June 18 order was not an abuse of discretion, and that County Line's contention that an evidentiary hearing should have been held has been forfeited, we next consider whether the sanctions imposed were excessive. The Park District's fee petition included time spent by its counsel in connection with enforcement of the settlement agreement, including researching and drafting the motion to enforce, researching and preparing an outline of questions for a deposition of Kenney and subpoenaing Kenney for the hearing. Time spent in connection with the motion for sanctions is not set out separately, but is bundled with entries describing other services rendered. Thus, reviewing the petition, it is impossible to discern, out of the total hours spent (44.25), how many were related to County Line's failure to serve the Park District with a copy of its appearance.

¶ 48    Citing Rule 219, the Park District's motion for sanctions requested attorney fees and costs incurred *as a result of* County Line's failure to comply with the order. The Park District did not request, nor could it have, an award of fees incurred in connection with its motion to

enforce the oral settlement agreement. Nothing in the submissions on the enforcement issue supported the existence of an agreement that if one party refused to honor the settlement, the other could recover attorney fees and costs associated with efforts to enforce it. Therefore, the Park District's submission of the entirety of the fees and costs incurred was unreasonable because it exceeded the scope of the relief it requested.

¶ 49    Furthermore, even if the trial court's order was unclear when it found that County Line "shall be responsible for the legal fees and costs incurred by [the Park District] subsequent to June 18, 2014, and through" September 23, the fact remains that the rule authorizes only those expenses, including a reasonable attorney fee, incurred "as a result of the misconduct." Ill. S. Ct. R. 219(c) (eff. July 1, 2002). Thus, the Park District's fee petition, which included all of the fees and costs incurred between those dates, was beyond the scope of the relief authorized by the rule and the trial court abused its discretion in awarding the Park District the fees and costs sought in its petition in full. See *Smith v. Gleash*, 325 Ill. App. 3d 79, 85-86 (2001) (trial court abused its discretion by awarding attorney fees that were not related to party's sanctionable misconduct); *Dyduch v. Crystal Green Corp.*, 221 Ill. App. 3d 474 (1991) (same).

¶ 50    Rule 219(c) also authorizes the imposition of a "penalty" if the court finds that the offending party's violation of the order was willful. But the trial court's order did not characterize any portion of the $8,673.56 awarded as a penalty. In any event, the trial court could only have awarded a penalty based on a finding that the violation was willful, a determination that would have required an evidentiary hearing and, ultimately, any penalty awarded would not have been paid to the Park District, but to the court.

¶ 51    The trial court initially awarded the sum of $350 as the fees and costs related to County Line's noncompliance with the June 18 order. It then granted the Park District leave to seek fees and costs in excess of the award if it chose to do so. While we do not condone County Line's violation of the trial court's order, the prejudice to the opposing side was minimal. The portion of the Park District's motion related to the violation of the June 18 order is less than three pages long. Regardless of when, if ever, the appearance was filed, the Park District received a copy of Ali's appearance via facsimile shortly after its motion was presented for hearing. Therefore, there does not appear to be any reason why the Park District's counsel would have devoted more than minimal time as a result of noncompliance with the order. Given that the hourly rates for the Park District's counsel ranged from $180-200 per hour, the award of $350 represents roughly 1½ to 2 hours of counsel's time, an amount that appears to be reasonable given that there is no indication in the record that counsel attempted to call or email the Hedayat firm to discuss its appearance.

¶ 52    With these observations in mind, we reverse the sanction awarded by the trial court and remand this matter to the trial court to conduct a hearing on the Park District's fee petition with the caveat that any fees and costs awarded in excess of $350 must be related solely to County Line's failure to serve the Park District with substitute counsel's appearance as required by the June 18 order.

¶ 53                                CONCLUSION

¶ 54    We affirm the trial court's decision to enforce the settlement agreement between the parties, since the trial court's finding that Jones's affidavit was more credible than Collins' affidavit was not erroneous as a matter of law. We reverse the fee award of $8,673.76 and

remand for further proceedings consistent with this opinion.

¶ 55          Affirmed in part, reversed in part, and remanded.