2022 IL App (1st) 220163-U

FIRST DISTRICT,
FIRST DIVISION
December 30, 2022

No. 1-22-0163

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| BIRNBAUM, HADDON, GELFMAN & ARNOUX, LLC, an Illinois Limited Liability Company, and LAW OFFICES OF JANE F. FIELDS, | ) ) ) ) | Appeal from the Circuit Court of Cook County, Illinois. |
| Plaintiffs-Appellees, | ) ) | No. 2018 M1 132343 |
| v. | ) ) | |
| DARIA MILEVA, | ) ) ) | Honorable Thomas Donnelly, Judge Presiding. |
| Defendant-Appellant. | ) | |

_____

JUSTICE COGHLAN delivered the judgment of the court.
Justices Pucinski and Hyman concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Appellant challenged trial court's ruling that there was an enforceable settlement agreement between the parties. Appellant's failure to provide this court with a complete record hinders meaningful review and requires affirmance of the circuit court judgment.

¶ 2    Defendant Daria Mileva (Mileva) retained plaintiffs Birnbaum, Haddon, Gelfman & Arnoux, LLC (BHGA) and the Law Offices of Jane F. Fields (Fields) in connection with a dissolution of marriage action. Subsequently, plaintiffs brought the instant breach of contract suit

against Mileva, seeking $26,114.15 in outstanding legal fees. Mileva filed counterclaims for legal malpractice and breach of contract, seeking damages "in excess of $100,000."

¶ 3        Plaintiffs filed a Motion to Enforce Settlement Agreement, alleging that Mileva breached an oral settlement agreement "to settle this matter in full" and release all claims against each other. The circuit court granted plaintiffs' motion and dismissed the case with prejudice. We affirm the judgment of the circuit court.

¶ 4                                          BACKGROUND

¶ 5        On August 7, 2015, Mileva retained BHGA to represent her in obtaining a divorce from her husband Ivan Valkov. *In re Marriage of Mileva and Valkov*, No. 15-D2-30338 (Cir. Ct. Cook County). On August 16, 2017, Mileva retained Fields as additional counsel in the same action. On March 7, 2018, Mileva and Valkov reached a marital settlement agreement and the court entered a judgment of dissolution.

¶ 6        On October 1, 2018, BHGA and Fields filed a breach of contract action against Mileva, alleging that she owed $26,114.15 in outstanding fees for legal services rendered to her during the divorce action. On April 15, 2019, Mileva answered the complaint and filed counterclaims for breach of contract and legal malpractice[1], alleging that plaintiffs failed to provide competent representation in the underlying case.

¶ 7        On or about September 20, 2021, Anthony Barone, lead counsel for BHGA, and Hristina Barganska, Mileva's counsel, had a telephonic settlement conference, during which Barone alleges that "all parties agreed to release their claims against each other." Barone reduced the oral agreement to writing, and forwarded the document to Barganska. A few weeks later,

---

[1] Mileva also filed a counterclaim for fraud which the trial court dismissed.

Barganska informed Barone that her client had "had a change of heart" and refused to sign the agreement.

¶ 8        On October 13, 2021, BHGA filed a Motion to Enforce Settlement Agreement (in which Fields later joined). In support of its motion, BHGA attached the affidavit of Barone, attesting that on or about September 20, 2021, he had a settlement conference via telephone with Mileva's counsel, Hristina Barganska. During this call, Barone proposed that "each party would dismiss its claims against the other, *with prejudice*, and there would be a full and general release of any and all claims by all parties against each other." (Emphasis in original.) Barganska "agreed to these proposed terms." She did not qualify her acceptance of the settlement or state that she did not have her client's authority to settle these claims. Barone "believed that the parties had reached agreement to settle this matter in full." Based on this "agreement," Barone reduced the oral settlement agreement to writing. After BHGA and Fields executed the written document, Barone forwarded a copy to Barganska for her client's signature. On or about October 11, 2021, Barone was informed that Mileva refused to sign the settlement agreement because of a "change of heart" and because she "wanted to keep a potential claim against [BHGA] for future litigation."

¶ 9        In her written response to the motion, Mileva acknowledged that settlement negotiations occurred between Barganska and Barone, but argued that no valid contract was formed because (1) there was no meeting of the minds regarding the material terms of the purported oral agreement; (2) her counsel's negotiations "were specifically made contingent upon Mileva's review and approval" of the written settlement agreement, which never occurred; and (3) "even if there was an oral settlement agreement reached ***, the parties' subsequent attempt to modify the terms of the agreement indicates that they effectively withdrew from the agreement."

¶ 10        Barganska's affidavit was attached in support of Mileva's response. Barganska attested that on September 17, 2021, she had a three-minute telephone conversation with Barone, who proposed dismissal of plaintiffs' breach of contract claim in exchange for dismissal of Mileva's breach of contract and legal malpractice claims. No other terms of settlement were discussed, including "the scope of a general release of liability." Barganska asked Barone to send her "a proposed written settlement agreement for [her] client's review." On October 1, Barganska received a proposed written settlement agreement from Jason Jochum, an attorney from Barone's office, and forwarded the document to Mileva. On October 2, 2021, Barganska received an email from Mileva stating that "she did not agree with the terms of the settlement agreement." Mileva was "outraged" when she read the general release of liability paragraph and requested that it "be modified to exclude any potential class actions that Mileva could maintain or participate in against Plaintiffs."

¶ 11        Barganska further attested that on October 11, she relayed Mileva's modification request to Jochum. Later that day, she received an email from Jochum stating that BHGA "did not agree to Mileva's requested modification of the Settlement Agreement and Release, that there was no claim for misbilling against his clients", and BHGA "would bring a motion to enforce" if Mileva did not sign the agreement. Mileva did not sign the agreement. BHGA's motion to enforce the settlement agreement was filed on October 13.

¶ 12        Following a hearing, the trial court issued a written order on January 10, 2022 granting the motion to enforce the settlement agreement. The court found that there was a valid and enforceable settlement agreement between the parties "[f]or the reasons stated on the Record." Pursuant to the terms of the settlement agreement, the court further found that "the parties have

released all claims against one another raised in this matter" and dismissed the case with prejudice.

¶ 13                                        ANALYSIS

¶ 14        On appeal, Mileva argues that the trial court erred in finding that the parties reached an oral settlement agreement, because there was no evidence that she gave her counsel authority to settle her claims. "When presented with a challenge to a trial court's determination that the parties reached an oral settlement agreement, a reviewing court will not overturn that finding unless it is against the manifest weight of the evidence." *Condon & Cook, L.L.C. v. Mavrakis*, 2016 IL App (1st) 151923, ¶ 55.

¶ 15        "A settlement agreement is a contract and is governed by principles of contract law." *County Line Nurseries & Landscaping, Inc. v. Glencoe Park Dist.*, 2015 IL App (1st) 143776, ¶ 33. An oral settlement agreement is enforceable if there is an offer, an acceptance, and a meeting of the minds between the parties regarding the terms of the agreement. *Id.*; see *Lampe v. O'Toole*, 292 Ill. App. 3d 144, 147-48 (1997) (enforcing oral settlement agreement despite plaintiffs' subsequent refusal to execute a written release).

¶ 16        An attorney representing a client "has no authority to compromise, consent to a judgment against the client, or give up or waive any right of the client" without the client's express authorization. *Brewer v. Nat'l R.R. Passenger Corp.*, 165 Ill. 2d 100, 105 (1995); see also *McAllister v. Hayes*, 165 Ill. App. 3d 426, 428 (1988) (settlement agreement was not enforceable where plaintiff's counsel accepted defendant's settlement offer "without plaintiff's permission or authority"). Our supreme court has explained:

> "Where a settlement is made out of court and is not made a part of the judgment, the
>
> client will not be bound by the agreement without proof of express authority. This

authority will not be presumed and the burden of proof rests on the party alleging authority to show that fact. [Citation.] *** [I]n such a case, opposing counsel is put on notice to ascertain the attorney's authority. If opposing counsel fails to make inquiry or to demand proof of the attorney's authority, opposing counsel deals with the attorney at his or her peril." *Brewer*, 165 Ill. 2d at 105-06.

¶ 17        It is well established that the appellant has the burden of presenting a sufficiently complete record to support her claims of error on appeal. *Webster v. Hartman*, 195 Ill. 2d 426, 432 (2001) (citing *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984)). "Absent a sufficient record, a reviewing court presumes that the trial court's order conformed to the law and had a sufficient factual basis." *Wing v. Chicago Transit Authority*, 2016 IL App (1st) 153517, ¶ 9. Here, the record contains no transcript or bystander's report of the January 10, 2010 hearing on plaintiffs' motion to enforce, which the court granted "[f]or the reasons stated on the Record." As a result, we do not know the findings or reasoning underlying the trial court's decision. Absent such knowledge, we cannot determine whether the trial court's findings "were against the manifest weight of the evidence." *O'Malley v. Udo*, 2022 IL App (1st) 200007, ¶ 60.

¶ 18        Mileva argues that the record is sufficiently complete to allow review on the merits, since "[t]he entire controversy hinges upon the communications between Barone and Barganska," which are addressed in their affidavits of record. We disagree. Barganska's affidavit does not affirm that she lacked the authority to settle Mileva's claims. More importantly, we do not know what additional factual information may have been disclosed, or what admissions may have been made, at the January 10, 2022 hearing. In this case, where the written order indicates that the court's ruling was based on "the reasons stated on the Record," Mileva's failure to provide us with a sufficiently complete record hinders meaningful appellate review.

¶ 19　　　　The record before us does not support Mileva's claim on appeal that that Barganska's alleged lack of authority to settle her claims was presented in the trial court. Accordingly, this argument is forfeited on appeal. See *Kane v. Option Care Enterprises*, 2021 IL App (1st) 200666, ¶ 33 ("Arguments that have not been raised in the trial court are forfeited and cannot be raised for the first time on appeal"). The forfeiture rule is designed to preserve judicial resources by requiring parties to bring issues to the trial court's attention and give the court an opportunity to correct any errors. *People v. McKay*, 282 Ill. App. 3d 108, 111 (1996). It is well established that "[a]ny doubts which may arise from the incompleteness of the record will be resolved against the appellant." *Foutch*, 99 Ill. 2d at 392. Defendant's failure to provide this court with a complete record requires us to "presume[] that the order entered by the trial court was in conformity with law and had a sufficient factual basis." *Id.*

¶ 20　　　　For the reasons set forth above, the judgment of the circuit court is affirmed.

¶ 21　　　　Affirmed.